[Crim. No. 19418. July 25, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
FRED AUSTIN DRAKE, Defendant and Respondent.

750

**COUNSEL**

John K. Van de Kamp, District Attorney, John E. Howard, Acting District Attorney, Harry B. Sondheim and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, William S. Smith, District Attorney (Fresno), and Brinton N. Bowles, Assistant District Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Wilbur F. Littlefield and Richard S. Buckley, Public Defenders, John M. Moore, Chief Deputy Public Defender, Harold E. Shabo, Francis J. Bardsley and Dennis A. Fischer, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

MOSK, J.—The People seek to appeal a ruling of the Superior Court of Los Angeles County modifying a finding that defendant was guilty of robbery (Pen. Code, § 211) to a finding that he was guilty of grand theft from the person of another (Pen. Code, § 487, subd. 2). The People contend that the trial judge acted solely out of a desire to exercise leniency toward defendant, rather than from an assessment of the evidence as contemplated by Penal Code section 1181, subdivision 6.[1]

Defendant was tried without a jury on charges of first degree robbery. The parties stipulated that the question of guilt would be submitted to the court on the basis of the preliminary hearing transcript. The only evidence adduced at the preliminary hearing was the testimony of the victim, one Jimmy Sheldon, a cab driver.[2]

---

[1]That statute provides: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: . . . 6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed."

[2]Sheldon testified that he picked up defendant in downtown Los Angeles, and that after they reached their destination Sheldon felt a sharp object like the blade of a pocket knife pressed against his neck. In response to a demand for his money, accompanied by a death threat, he handed over more than $100 from his shirt pocket. He was then ordered to turn off the light and surrender his wallet and keys, his passenger still threatening to kill him. After Sheldon complied with this demand, defendant stepped out of the car and approached the driver's door. Sheldon testified he saw a knife in defendant's hand, although he could not remember any of its characteristics on cross-examination. He further testified he drew a .25 caliber pistol from his pocket, at which point defendant

The judge initially found defendant guilty of robbery in the first degree.[3] At the hearing on defendant's motion for new trial and application for probation, the court denied a new trial; however, citing the authority of Penal Code section 1181, subdivision 6, the judge, over the People's objection, modified his earlier ruling by finding defendant guilty of grand theft in violation of Penal Code section 487, subdivision 2, a lesser offense included in the crime of robbery:[4]

The People point to several features of the record in support of their assertion that the judge did not modify his finding after reevaluating the evidence against defendant as required by section 1181, subdivision 6. They rationalize that if the court had disbelieved Sheldon's testimony it would have granted the motion for a new trial, and that the facts of the case make it implausible that defendant could have taken Sheldon's property without some force or threat of force. Furthermore, they point to the argument of defense counsel on the hearing of the new trial motion, which stressed defendant's character and record.[5] Finally, the People cite comments made by the judge on sentencing, after he had modified his earlier finding, commending defendant for the "exemplary life which he's lived up to this point" and otherwise indicating a desire to show leniency.

Defendant urges, in response, that the record does not exclude the possibility that the judge reweighed the evidence against him; indeed, the judge, on modifying his earlier finding, stated he found "that the defendant is guilty under the facts in this case, and under the evidence of this case, of 487.2 of the Penal Code. . . ." The comments seized upon by the People were made after the modification was already ordered, and were uttered in connection with the grant of probation. Defendant then

---

fled. Sheldon fired at him and then pursued him for "about two blocks," firing one more shot.

Later Sheldon was taken to a hospital where he was shown some clothing of defendant which he identified as belonging to the man who had taken his money. He also viewed defendant, lying on a cot; however, he did not see his face, only his feet. He did not observe defendant wearing any of the identifying clothing.

[3]Section 211a of the Penal Code provides, in relevant part, "the robbery of any person who is performing his duties as operator of any motor vehicle, . . . used for the transportation of persons for hire, is robbery in the first degree."

[4]All code references herein are to the Penal Code.

[5]Counsel stated, inter alia, that defendant had "adequately convinced both myself and, I think, the probation officer, and the Court that this thing that he did was not something that he had planned out. It was something that he did on the spur of the moment, rather foolishly, and he didn't arm himself with a dangerous and deadly weapon. He had a plastic ballpoint pen." Counsel also mentioned that defendant had suffered "a very grievous injury" and stated he felt defendant had "learned his lesson."

relies on the broad presumption that the court fulfilled its statutory duty. (*People* v. *Oliver* (1975) 46 Cal.App.3d 747, 752 [120 Cal.Rptr. 368].)

Before the propriety of the trial court's ruling may be reviewed, a determination must first be made that an appeal by the People is permissible. This threshold question involves two aspects: whether the law provides for an appeal in this case; and whether, even if provided by statute, such an appeal would violate constitutional guarantees against double jeopardy. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) Because we conclude there is no statutory authorization for an appeal by the People from an order under section 1181, subdivision 6, which modifies a verdict or finding to that of a lesser included offense, we reach neither the question of the propriety of the trial court's action nor the constitutional issue.[6]

 "The Legislature has determined that except under certain limited circumstances the People shall have no right of appeal in criminal cases." (*People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 497 [72 Cal.Rptr. 330, 446 P.2d 138].) Those circumstances are enumerated in section 1238. The People contend that authorization for the appeal in this case may be found in any one of several paragraphs of section 1238, subdivision (a); but they concentrate on subsection (6) thereof, which provides for an appeal by the state from "[a]n order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed."

On its face, the language of subsection (6) provides only for appeal from rulings which result in a reduction of the *degree* of the offense specified in the original verdict or finding, not from rulings which result in reductions to *lesser included* offenses. This impression is fortified when subsection (6) is compared with section 1181, subdivision 6, in which the Legislature is explicit in separately providing for the court's power to make both types of rulings: the latter subdivision (fn. 1, *ante*) declares

---

[6]Thus we do not resolve the issue left open by a majority of this court in *People* v. *Serrato* (1973) 9 Cal.3d 753, 762 [109 Cal.Rptr. 65, 512 P.2d 289], i.e., "Whether the order modifying the verdict, under section 1181, subdivision 6, can properly be characterized as an implied acquittal of the greater offense . . . ."

In *Serrato* this court cited (at p. 762, fn. 7) two cases in which it has reviewed and affirmed orders modifying jury verdicts to lesser included offenses. (*People* v. *Sheran* (1957) 49 Cal.2d 101 [315 P.2d 5]; *People* v. *Borchers* (1958) 50 Cal.2d 321 [325 P.2d 97].) The court noted, however, that in each case "no question was raised as to the propriety of the appeals." The issue thus appears to be one of first impression. Its resolution here necessarily reflects upon our reviewing the merits of lower court orders in *Sheran* and *Borchers*.

that "if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, *or of a lesser crime included therein,* the court may modify the verdict, finding or judgment accordingly. . . ." (Italics added.)

The close connection between section 1181 and section 1238 makes it difficult to attribute the more restrictive language of the latter to legislative inadvertence. Subsection (6) was added to section 1238 in 1951. as part of the same legislation which also added subdivision 7 to section 1181 and modified the wording of subdivision 6 of that section to encompass modifications of "findings" as well as "verdicts." (Stats. 1951, ch. 1674, §§ 117, 134, pp. 3850, 3855.) Indeed, language was added to section 1238 relating to "an order modifying the verdict or finding by reducing . . . the punishment imposed" in order to allow the People an appeal from orders authorized by the same legislation in section 1181, subdivision 7. (See Final Rep. of the Special Crime Study Com. on Crim.Law and Proc. (June 30, 1949) recom. 26, pp. 32-33.)

Clearly the Legislature was aware of the intimate relationship between these two sections of the same code. In this context, the failure to provide in section 1238, subdivision (a), subsection (6), for appeals from orders modifying findings to lesser included offenses, while maintaining a distinct provision in section 1181, subdivision 6, for the authority to issue those orders, raises a strong inference that the Legislature did not intend the orders to be appealable by the People. ■ " 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' " (*People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1].)

Furthermore, in 1951 the Legislature had reason to provide for appeals by the state from degree reductions but not from orders modifying findings to lesser included offenses. At the time, California case law drew a sharp line between the effect of a conviction of a lesser degree and a conviction of a lesser included offense for the purpose of applying the "implied acquittal" doctrine. "In California a distinction [had] been drawn by the courts to the effect that where one is convicted of a lesser offense necessarily included in the charge of a greater offense, he may not be tried again on a charge that he has committed the greater offense. On the other hand, where a crime divided into degrees is concerned, a conviction of a lower degree of the crime [had] been held not to operate as an acquittal of the higher degree." (*Gomez* v. *Superior*

*Court* (1958) 50 Cal.2d 640, 643 [328 P.2d 976].) It was not until *Gomez* that this court declared there was "no sound reason" for the distinction, and held that conviction of a lesser degree of a crime also operated as an "implied acquittal" of the greater offense for purposes of California's double jeopardy clause. (*Id.*, at p. 644.) It appears that the Legislature, acting in 1951 under the pre-*Gomez* rule, believed that an appeal of an order modifying a finding or verdict to a lesser included offense would present potential double jeopardy problems that might not arise when a reduction in degree was appealed by the People. The Legislature then sought to avoid these potential difficulties by declining to provide for an appeal by the People in cases of reductions to lesser included offenses.

Nevertheless, the People seek to bring this appeal under subdivision (a), subsection (6), of section 1238 by characterizing it as an order modifying the finding by reducing "the punishment imposed." The simple rebuttal to the contention is that when the court acted here sentence had not yet been pronounced and hence there was no existing "punishment imposed" subject to reduction.

Of course, in general the modification of a finding to a lesser included offense may have the effect of reducing the potential punishment, although that result does not necessarily follow. But the code refers to actual punishment imposed. To hold that any order which might have an effect on eventual punishment is appealable under subsection (6) would distort both the language and the structure of the statute. Such an interpretation would render superfluous the language in subsection (6) relating to orders "reducing the degree of the offense," as those orders also are likely to result in reducing the punishment imposed. In short, the phrase in subsection (6) regarding reductions in "the punishment imposed" was apparently designed merely to allow the People to appeal from orders such as those under section 1181, subdivision 7, reducing punishment from that actually fixed in a prior verdict or finding. (See Final Rep. of the Special Crime Study Com., *op. cit. supra,* Recom. 26, pp. 32-33.)[7]

---

[7]The People rely on *People* v. *Burke* (1956) 47 Cal.2d 45, 53 [301 P.2d 241], in which this court stated that an order striking the charge of a prior conviction "was in its nature one of the orders specified as appealable either by paragraph 1 or by paragraph 6 of section 1238 of the Penal Code." However, in *People* v. *Valenti* (1957) 49 Cal.2d 199, 207 [316 P.2d 633], we emphasized that the considerations involved in the appeal of an order striking a prior conviction are quite different from those involved in the appeal of an order which goes to the "cause of action itself," as does the order in this case.

We conclude that the Legislature did not intend to provide for an appeal in this case when it added subsection (6) to section 1238, subdivision (a).

■ The People suggest in the alternative that their appeal may be brought under three other subsections of section 1238, subdivision (a). Yet each of these arguments would also require us to defy the clear meaning of the statutory terms. Thus the order of the trial court modifying its finding of guilt manifestly was not an order "setting aside the indictment, information, or complaint" appealable under subsection (1) of subdivision (a); defendant was found guilty under the felony information originally filed in this case. Nor was the order one "granting a new trial" for which subsection (3) provides a state appeal.

Finally, this appeal does not come under subsection (8), providing for review of "An order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." The People concede that the order in this case did not dismiss the action, but argue that it was one "otherwise terminating the action."[8] Yet the order from which the People seek to appeal did not terminate the action at all; following that order the action simply proceeded into the sentencing phase.[9] The People attempt to circumvent this fact by the conceptual .device of characterizing the modification by the judge as having "terminated the action on the portion of the information charging first degree robbery." None of the cases cited by the People invokes such a diluted concept of "termination" (see *People* v. *Allen* (1974) 41 Cal.App.3d 821, 824 [116 Cal.Rptr. 493]; *People* v. *Smith* (1955) 133 Cal.App.2d Supp. 777 [284 P.2d 203]; *People* v. *Finch* (1953) 119 Cal.App.2d Supp. 892 [258 P.2d 1124]), and the structure of section 1238 as a whole clearly indicates that the provision relevant to modifications of findings of guilt is not subsection (8), but subsection (6). We decline to either manipulate the accepted

[8]Similarly, the People concede that the order did not come before defendant was placed in jeopardy, but claim that defendant has "waived" jeopardy. No authority is cited, however, for the proposition that a motion for a modification under section 1181, subdivision 6, constitutes such a waiver.

[9]Section 683 defines "criminal action" as "The proceeding by which a party charged with a public offense is accused and brought to *trial and punishment* . . . ." (Italics added.) An "action" as conceived by the code thus continues beyond the pronouncement of a verdict of guilty.

In *People* v. *Orin* (1975) 13 Cal.3d 937, 940 [120 Cal.Rptr. 65, 533 P.2d 193], we implied that an order dismissing two counts of a three-count indictment might fall under subsection (8). The information filed in this case involved only one count, however, and the trial court's order did not terminate the action on that count.

concept of "terminating the action" or wrench subsection (8) out of its natural context in order to compensate for the Legislature's decision not to provide in subsection (6) for an appeal in this case.

As this court noted in *People* v. *Superior Court (Howard)* (1968) *supra,* 69 Cal.2d 491, 501, "Appellate review at the request of the People necessarily imposes substantial burdens on an accused, and the extent to which such burdens should be imposed to review claimed errors involves a delicate balancing of the competing considerations of preventing harassment of the accused as against correcting possible errors." Where the Legislature, after it has engaged in this "delicate balancing," chooses with some precision the situations in which it believes those burdens on the accused are justified, the courts should not destroy that equilibrium by stretching statutory language beyond its manifest meaning. Such judicial interference is to be avoided particularly when the interests which the plain text honors are of the type protected by a specific constitutional provision. (See Cal. Const., art. I, § 15.)

█ Finally, we consider that portion of the People's presentation which asks, if no statutory basis for an appeal exists, that their opening brief be treated as a petition for an original writ of mandamus to review the trial court's ruling. We know of no precedent for consideration of such a request at this late hour in an appellate proceeding. *People* v. *Superior Court (Edmonds)* (1971) 4 Cal.3d 605 [94 Cal.Rptr. 250, 483 P.2d 1202], involved an original petition for mandate filed promptly after the order of which the People complained; in *People* v. *Cina* (1974) 41 Cal.App.3d 136 [115 Cal.Rptr. 758], and *People* v. *Thompson* (1970) 10 Cal.App.3d 129 [88 Cal.Rptr. 753], the People alternatively filed for an extraordinary writ with their appeal. In this case, by contrast, no request for such a writ appears until a footnote in the People's supplemental brief filed in their purported appeal to this court. The request, even if it were arguably supportable, is tardy. (Cf. *Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995 [115 Cal.Rptr. 620].)

Moreover, even if we believed the trial court's actions to be erroneous and were to consider the People's request for extraordinary relief, the request would have to be denied. The statutory restriction of the People's right to appeal in criminal cases "is not merely a procedural limitation allocating appellate review between direct appeals and extraordinary writs but is a substantive limitation on review of trial court determinations in criminal trials." (*People* v. *Superior Court (Howard)* (1968) *supra,* 69 Cal.2d 491, 498; see also *People* v. *Superior Court (Levy)* (1976) 18

Cal.3d 248, 251 [133 Cal.Rptr. 624, 555 P.2d 633].) This consideration carries particular force when the People seek review of an order which on its face is a timely exercise of a well-established statutory power of trial courts, but one from which no appeal is provided in section 1238. To allow the use of mandamus in this case would "give the People the very appeal which the Legislature has denied to them." (*Howard, supra,* at p. 499; see also *People* v. *Valenti* (1957) *supra,* 49 Cal.2d 199, 205.)

The appeal is dismissed.

Tobriner, Acting C. J., Sullivan, J.,* Wright, J.,† and Ault, J.,‡ concurred.

**RICHARDSON, J.**—I concur in the result. It is arguable that the Legislature did not intend to create a "loophole" entirely insulating from appellate review those orders which, as in the present case, drastically affect both the nature of the offense and the punishment therefor. The trial court's action herein may perhaps be characterized as reducing "the degree of the offense or the punishment imposed" within the meaning of section 1238, subdivision (a)(6), of the Penal Code. Nonetheless, there is an unsatisfactory and imprecise meshing of the statutory language and procedural record before us. If a gap was unintentionally created by the Legislature in the pattern of criminal appeals, it is better filled by legislative attention than by judicial ingenuity.

Clark, J., concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

‡Assigned by the Chairman of the Judicial Council.