JOHNSON, J.
I respectfully dissent. This is an extraordinarily close case, however. In no sense is this one of those instances where the dissenter thinks the majority is guilty of an egregious error in its analysis or its interpretation of the facts. Nor is it one where some fundamental constitutional or legal principle is at stake. Indeed I consider the majority has presented a well-reasoned argument in support of its resolution of the conflict between these two statutes. The problem is the conflict is so profound, the Gordian knot so tightly wound, that an equally persuasive argument—indeed in my view a marginally more persuasive argument—can be made for the opposite resolution.
So I dissent more out of frustration than conviction. Perhaps by doing so this exchange of judicial opinions can serve as a signal to the Legislature *1571 this series of statutes has left the courts in a quandary. Traditional rules of statutory construction do not seem to really solve the puzzle; they cancel each other out. And, as can best be determined from the available evidence of legislative intent, the lawmakers did not expressly contemplate the issue bothering us here. So we are left to decipher the legislators’ probable or possible intent on this question from what they said about those issues they did choose to discuss. I, for one, would ask the Legislature to enact its own ultimate resolution of this conflict, and have no strong preference for how they resolve it.
The majority has stated its well-argued case for the proposition that Vehicle Code section 23202 applies to mentally retarded defendants as well as others and excludes them from eligibility for diversion under Penal Code section 1001.20 et seq. I now explain the opposite view and why I find it marginally more persuasive. I would hold, primarily for reasons of legislative intent and public policy, that Vehicle Code section 23202 does not apply to mentally retarded defendants otherwise eligible for diversion under Penal Code section 1001.20 et seq.
The Penal Code authorizes the trial court to consider diverting to a treatment program a mentally retarded defendant charged with “any offense which is ... a misdemeanor, except that diversion shall not be ordered when the defendant previously has been diverted under this chapter within two years prior to the present criminal proceedings.” (Pen. Code, § 1001.21.) If the defendant performs satisfactorily in the treatment program, “the criminal charges shall be dismissed at the end of the diversion period.” (Pen. Code, § 1001.31.)
The Vehicle Code, on the other hand, provides that “[i]n any case in which a person is charged” with driving under the influence of alcohol “the court shall not suspend or stay . . . [or] dismiss the proceedings because the accused person attends or participates” in any education, training or treatment program “including but not limited to a driver improvement program, a treatment program for persons who are habitual users of alcohol or other alcoholism program, a program designed to offer alcohol services to problem drinkers, an alcohol or drug education program, or a treatment program for persons who are habitual users of drugs or other drug-related program, [fl] (b) This section shall not apply to any attendance or participation in any education, training, or treatment programs after conviction and sentencing, including attendance or participation in any of those programs as a condition of probation granted after conviction when permitted pursuant to this article.”
When, as here, the defendant is both mentally retarded and charged with driving under the influence of alcohol, the two sections are in conflict. One of them has to give way.
*1572 The People argue the Vehicle Code section should be interpreted literally to prohibit diversion “in any case” including a case in which the defendant is mentally retarded. In support of this contention the People cite the well-settled rule “a general provision is controlled by one that is special, the latter being treated as an exception to the former.” (People v. Perez (1961) 198 Cal.App.2d 460, 464 [18 Cal.Rptr. 164].) The People argue the common subject of both sections is diversion. The Penal Code contains a general diversion provision authorizing eligibility for diversion for all misdemeanors alleged to have been committed by mentally retarded persons. The Vehicle Code, however, focuses on the misdemeanor of drunk driving and specifically prohibits diversion of anyone charged with this particular crime. Thus, the specific provision of the Vehicle Code governs over the general provision of the Penal Code. The People also point out a specific statute governs a more general statute regardless of which statute is enacted first (Warne v. Harkness (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377]), although here the Vehicle Code section prohibiting diversion was enacted a year after the Penal Code section permitting diversion for mentally retarded defendants.
Finally, the People argue that interpreting the Vehicle Code to prohibit diversion of mentally retarded defendants is consistent with the Legislature’s “get tough” policy on drunk driving as evidenced by increased penalties for this oifense. (See People v. Municipal Court (Hinton) (1983) 149 Cal.App.3d 951 [197 Cal.Rptr. 204]; Burg v. Municipal Court (1983) 35 Cal.3d 257, 263-265 [198 Cal.Rptr. 145, 673 P.2d 732].) To the extent the mentally retarded need specialized treatment in this area, the People point out this treatment can be provided after conviction and sentencing as a condition of probation. (Veh. Code, § 23202, subd. (b).) Indeed, Vehicle Code section 23161, subdivision (d) provides that if a county adopts an alcohol or drug education program to be included as a condition of probation, “the county shall provide, as appropriate, services to . . . any . . . group that has particular needs related to the program.” The People note mentally retarded drunk drivers would qualify as a group with “particular needs” under Vehicle Code section 23161, subdivision (d).
The People’s contentions have merit, but they do not clinch the argument. It can be contended just as forcefully that Vehicle Code section 23202 contains a general provision prohibiting diversion for any defendant in drunk driving cases while Penal Code section 1001.20 et seq. focus specifically on mentally retarded defendants and authorize diversion for this specific class of defendants no matter what misdemeanor they are charged with. In support of this argument, Mr. Weatherill points out the diversion program for the mentally retarded is the only diversion program which focuses on the status of the offender. All other diversion programs in title 6, *1573 part 2 of the Penal Code focus on the offense charged. (Cf. ch. 2.5 [narcotics and drug abuse cases]; ch. 2.6 [domestic violence]; ch. 2.65 [child abuse and neglect]; chs. 2.7 and 2.9 [misdemeanors]; ch. 2.9A [bad checks]. As to the sequence of enactment, the implied amendment of an existing code section by a subsequently enacted code section is not to be favored. (Penziner v. West American Finance Co. (1937) 10 Cal.2d 160, 176 [74 P.2d 252]; People v. Eaker (1980) 100 Cal.App.3d 1007, 1016 [161 Cal.Rptr. 417].) Implied amendment should be considered only if there is no reasonable basis for harmonizing the two sections. (Fuentes v. Workers’ Comp. Appeals Bd. (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449]; Myers v. King (1969) 272 Cal.App.2d 571, 579 [77 Cal.Rptr. 625].) Although Penal Code section 1001.20 et seq. and Vehicle Code section 23202 cannot be simultaneously applied to Mr. Weatherill, this does not mean the sections are in irreconcilable conflict. For example, if Vehicle Code section 23202 specifically prohibited diversion for mentally retarded defendants accused of drunk driving, it would, as the later-enacted statute, impliedly abrogate any contrary language in Penal Code section 1001.20 et seq. (Cf. Santa Barbara Federation of Teachers v. Santa Barbara High School Dist. (1977) 76 Cal.App.3d 223, 234-236 [142 Cal.Rptr. 749].) However, in our case the statutes can be reconciled by applying Penal Code section 1001.20 et seq. to mentally retarded defendants accused of drunk driving and Vehicle Code section 23202 to all other defendants accused of drunk driving. Thus the later-in-time rule of statutory construction is not applicable. (Cf. Fuentes v. Workers’ Comp. Appeals Bd., supra, 16 Cal.3d at p. 7.)
Mr. Weatherill also points out that in enacting other diversion programs, applicable to the general public, the Legislature specifically prohibited diversion for defendants charged with drunk driving. (Pen. Code, §§ 1001.2, subd. (a), 1001.51, subd. (b).) The diversion program for the mentally retarded contains no such prohibition. He concludes from this the Legislature did not intend to prohibit diversion of mentally retarded defendants because it did not express such a prohibition in the diversion program for the mentally retarded as it did with respect to diversion programs for the public generally. He cites in support of this argument the long-standing rule of statutory construction: expressio unius est exclusio alterius, the expression of certain things in a statute necessarily involves exclusion of other things not expressed. (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1391 [241 Cal.Rptr. 67, 743 P.2d 1323].) Under this rule, where a statute contains a given provision on a subject, the omission of such provision from a similar statute concerning a related subject “ ‘ “is significant to show that a different intention existed.” ’ ” (People v. Drake (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622]; and see People v. Castoe (1978) 86 Cal.App.3d 484, 489 [150 Cal.Rptr. 237]; Sonoma Subaru, Inc. v. New Motor Vehicle Bd. (1987) 189 Cal.App.3d 13, 21-22 *1574 [234 Cal.Rptr. 226].) In the case before us, the fact the Legislature failed to exclude defendants charged with drunk driving from the diversion program for the mentally retarded but specifically excluded such defendants from diversion programs applicable to the general public clearly implies, under the doctrine of inclusio unius est exclusio alterius, that the Legislature did not intend to bar diversion for mentally retarded defendants charged with drunk driving. (Cf. People v. Castoe, supra, 86 Cal.App.3d at p. 489.)
The legislative history of the relevant diversion programs and the Vehicle Code’s prohibition on diversion in drunk driving cases supports the conclusion the Legislature did not intend to prohibit diversion of mentally retarded defendants charged with drunk driving.
The first of these diversion programs was added to the Penal Code in 1977 as chapter 2.7 of part II, title 6 (§§ 1001-1011). (Stats. 1977, ch. 574.) This program contained no limitations as to the type of offenders or offenses covered except it did not apply to persons convicted of drunk driving. (Former Pen. Code, § 1001.2, Stats. 1977, ch. 574, § 2; 64 Ops. Cal.Atty.Gen. 179, 181, 183 (1981).) The diversion program for the mentally retarded was added as chapter 2.8 in 1980 (Stats. 1980, ch. 1253), and has remained essentially unchanged since that time. The program contains no exception for mentally retarded defendants accused of drunk driving. Under chapter 2.7, some counties developed diversion programs referred to as “Lucky Deuce” programs. (A drunk driving charge under Vehicle Code section 23152 is commonly referred to as a “deuce.”) Under the auspices of the court, the district attorney and defense counsel, first-time offenders could elect to enter a year-long “Lucky Deuce” program at their own expense. Upon successfully completing the program, the “deuce” could be reduced to reckless driving, a moving violation or even dismissed entirely in the court’s discretion. The court proceedings were stayed pending completion of the program. (Sen. Jud. Comm. Rep. on Assem. Bill No. 541 (1981-1982 Reg. Sess.) pp. 7-8.) According to the Senate Judiciary Committee report, Vehicle Code section 23202 would eliminate these “Lucky Deuce” programs. (Id. at p. 7.)
The legislative history of Vehicle Code section 23202 furnished us by the Legislative Intent Service contains nothing which would indicate the Legislature had the diversion program for the mentally retarded in mind when it enacted that section. Rather, the materials imply the Legislature sought only to eliminate the “Lucky Deuce” programs. (See maj. opn., ante, p. 1576.) I note the majority cannot find any specific reference to the diversion program for the mentally retarded in the legislative history of section 23202. The best it can do to support its argument is to quote from a bill analysis prepared by the Department of Drug and Alcohol Programs which *1575 stated, “[t]he bill would prohibit any stay of proceedings with regard to [drunk driving] offenses. . . (Italics added; see maj. opn., ante, p. 1577.) The majority omit the rest of the sentence which reads: “. . . when such stay of proceedings is to allow the accused to participate in a driver improvement program or in an alcohol/drug treatment program.” Again, the clear implication is that section 23202 was intended to do away with the counties’ “Lucky Deuce” programs, not with rehabilitation programs for the mentally retarded which are much more than mere “driver improvement” or alcohol/drug treatment programs.
In 1981, the Legislature enacted Vehicle Code section 23202 prohibiting diversion in drunk driving cases. (Stats. 1981, ch. 940.) In 1982, chapter 2.7, authorizing county-option diversion programs, was repealed by operation of its “sunset” provision. It was reenacted later that year by Statute 1982, chapter 42. The reenacted chapter 2.7 contained an explicit provision excluding drunk driving cases from its coverage. (Pen. Code, § 1001.2, subd. (a).) In the same year, 1982, by a different bill the Legislature added chapter 2.9 to the Penal Code (§§ 1001.50-1001.55) authorizing a county board of supervisors to adopt diversion programs for certain misdemeanors but explicitly excluding drunk driving cases. (Pen. Code, § 1001.51, subd. (b).) (Stats. 1982, ch. 1251, § 2.) In 1983, the Legislature repealed the “sunset” provision of chapter 2.8, the diversion program for the mentally retarded. (Stats. 1983, ch. 1215, § 1.)
The close connection between Penal Code chapters 2.7, 2.8 and 2.9 and Vehicle Code section 23202 makes it difficult to attribute the lack of a drunk driving restriction in chapter 2.8 to legislative inadvertence. (Cf. People v. Drake, supra, 19 Cal.3d at p. 755.) It is assumed the Legislature has existing laws in mind when it passes a statute. (Estate of McDill (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].) Although this assumption may not always comport with reality, it is particularly applicable in this case where all three diversion programs and the Vehicle Code section were enacted in contiguous legislative sessions, addressed the same subject and passed through the same legislative committees, the Assembly Criminal Justice Committee and the Senate Judiciary Committee. Clearly in this instance the Legislature was aware of the intimate relationship between the sections of the Penal Code establishing diversion programs and the section of the Vehicle Code prohibiting diversion programs. (Cf. People v. Drake, supra, 19 Cal.3d at p. 755.)
Not only was the Legislature aware of the relationship between the code sections, its failure to amend chapter 2.8, the diversion program for the mentally retarded, to exclude drunk driving cases at the time it excluded drunk driving cases from the chapters 2.7 and 2.9 diversion programs indi *1576 cates an intent to treat the mentally retarded differently from the general public with respect to diversion in drunk driving cases. It is a fundamental rule of statutory construction “ ‘failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.’ ” (Estate of McDill, supra, 14 Cal.3d at pp. 837-838.) The Legislature’s enactment of a prohibition on diversion in drunk driving cases in chapters 2.7 and 2.9 in the face of a corresponding failure to amend chapter 2.8 to include the same prohibition strongly indicates the Legislature did not intend such a prohibition to apply to the diversion program for the mentally retarded. (Cf. People v. Olsen (1984) 36 Cal.3d 638, 647 [205 Cal.Rptr. 492, 685 P.2d 52].) The omission of a corresponding amendment to chapter 2.8 is also consistent with the fact chapter 2.8 does not focus on the nature of the crime but on the nature of the offender. (See ante, at p. 1582.)
Diversion of mentally retarded drunk driving defendants is not inconsistent with legislative efforts to protect society from the “horrific risk posed by those who drink and drive.” (Burg v. Municipal Court, supra, 35 Cal.3d at p. 262.) Quite the contrary. The diversion program at issue here is consistent with the Legislature’s recognition mentally retarded misdemeanants and society as a whole may derive greater benefit from diversion than from mainstream criminal prosecution. The Legislature has long recognized that mental retardation presents unique social, medical and legal problems. (See Welf. & Inst. Code, § 4501.) As a result, “[t]he Legislature has enacted a comprehensive statutory scheme ... to provide a ‘pattern of facilities and services . . . sufficiently complete to meet the needs of each person with developmental disabilities . . . .’ Such services include . . . on an individual basis, selecting and providing services to meet such needs . . . .” (Association for Retarded Citizens v. Department of Developmental Service (1985) 38 Cal.3d 384, 388 [211 Cal.Rptr. 758, 696 P.2d 150].) If the trial court finds a mentally retarded defendant would benefit by diversion, the defendant receives a supervised treatment program “which is individually tailored to the needs of the defendant. . . and which includes, but is not limited to, treatment specifically addressed to the criminal offense charged.” (Pen. Code, § 1001.20, subd. (f).) The treatment is provided by a state treatment center specializing in problems of the mentally retarded. Supervision is accomplished by progress reports from the treatment center to the court and prosecutor every six months. (Pen. Code, § 1001.23, subd. (c).) If the defendant’s progress is unsatisfactory, the court may modify the program or reinstitute the criminal proceedings. (Pen. Code, § 1001.29.)
As noted above, the People, joined by the majority of this court, argue such a diversion program is unnecessary for mentally retarded drunk *1577 drivers because the same treatment can be ordered as a condition of probation after conviction. The facts in Mr. Weatherill’s case refute this argument. Mr. Weatherill was previously convicted of drunk driving in 1984. Although the terms of probation on that conviction are not included in our record, it is obvious they were ineffective in preventing a repeat offense. In the present case imposition of sentence was suspended and Mr. Weatherill was placed on summary probation on terms that included nine days in jail, a fine and the routine terms imposed in drunk driving cases. The only condition having any relationship to Mr. Weatherill’s particular problem was a requirement he attend 24 Alcoholics Anonymous meetings. The contrast between the terms of Mr. Weatherill’s probation and the terms for diversion under chapter 2.8 of the Penal Code is striking. (See ante, at p. 1585.) Thus, notwithstanding the theoretical availability of specialized treatment for mentally retarded persons convicted of drunk driving, the facts of this case demonstrate such persons are treated the same as other convicted drunk drivers. There is no special attention given to their unique problems as there would be if diversion were ordered.
It seems to me the outcome the majority reaches in this case, affirmance of Mr. Weatherill’s sentence, is inconsistent with the deep concern the majority and I share over the loss of lives, injuries and property damage caused by drunk drivers. Although the majority cites trial court discretion in sentencing to prescribe treatment programs and the state’s obligation to provide appropriate services to the mentally retarded (maj. opn., ante, p. 1580.), it is obvious from Mr. Weatherill’s case these concepts have no meaning in the real world of the criminal courts. Mr. Weatherill received the same sentence an unimpaired defendant would have received. Even if we were to accept the majority’s resolution of the conflict between the statutes on preconviction diversion of mentally retarded drunk drivers, at the very least, this case should be remanded to the trial court with instructions to resentence Mr. Weatherill in accordance with his special needs as a mentally retarded substance abuser.
In any event, no matter what a trial court may be empowered to do with mentally retarded drunk drivers after they have been convicted the issue of what the law allows judges to do with these defendants before they are tried remains a live issue. Implicit in the majority opinion is the policy assumption the Legislature feels jail is always the best deterrent for all defendants. Thus, when the Legislature enacted Vehicle Code section 23202 it was saying we are going to deter drunk driving by imposing jail time on all those who are caught committing that crime. It follows if the Legislature thought jail was the best way of deterring drunk driving why should we exempt mentally retarded drunk drivers from that deterrent. When drunk, they are *1578 just as dangerous on the highways as those of normal intelligence. So why should they be treated differently.
But Penal Code section 1001.20 was enacted not as an act of kindness to the mentally retarded. It was enacted because the Legislature felt imprisonment was ineffective as a deterrent for that class of defendants—or at least some substantial number within that class. Presumably many in that class have difficulty even comprehending the link between crime and punishment. So in order to reduce the frequency of crime committed by mentally retarded people the Legislature authorized a more effective approach—a comprehensive system of educational and support services calculated to reach the retarded in ways a few days or a few months in a jail cell never could. If treatment is better than jail as a means of reducing crime for mentally retarded people who commit other misdemeanors why is it not the better way when the crime is drunk driving.
So once again it is possible to reconcile the two statutes in a way which supports pretrial diversion of mentally retarded individuals accused of drunk driving. The underlying policy assumptions are not in conflict. On the one hand, the Legislature decided the best way to reduce the level of drunk driving is to impose the deterrent of imprisonment on all defendants capable of responding to that deterrent. Yet it is not inconsistent with that purpose for the Legislature to have decided the best way to reduce the level of drunk driving among the mentally retarded is not to automatically inflict punishment which would not deter them but to put them in a special comprehensive program better calculated to prevent them from repeating this crime. So under Penal Code section 1001.20 it left to the discretion of the court to determine in each case whether a given defendant is suffering from a degree and type of mental retardation which makes jail less effective than treatment as a means of reducing the defendant’s chances of drunk driving in the future. This makes sense as a policy matter as a way of reducing drunk driving by members of this class of citizens and is a sensible way of interpreting the legislative intent which created the ostensible conflict between Penal Code section 1001.20 and Vehicle Code section 23202.
So this completes the case for the other side. As mentioned earlier, I find it more persuasive than the majority’s interpretation, although only marginally so.
There is a tendency among appellate judges in writing their opinions, and I am as guilty of this as any other, to discuss tough cases as if they were easy, to characterize debatable answers as being obvious, and to write up razor thin cases as if a vast chasm separates the correct from the incorrect *1579 result. We may spend days in the quiet of our chambers trying to formulate our individual positions on a close question, then hours arguing among ourselves, and along the way shift our views to and fro several times. Yet when we finally get around to writing the opinion we inform the reader it was a piece of cake. Logic, precedent and principle all pointed in a single direction and the result we reached was inevitable.
Well, in all candor I do not regard the instant case as easy, the answer obvious, or the result inevitable. If nothing else, I hope this dissent exposes the depth of our problem. This time the Legislature has handed us a true conundrum.
Appellant’s petition for review by the Supreme Court was denied March 15, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.