BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE DENNIS BUNTING, COUNTY COUNSEL, COUNTY OF SOLANO, has requested an opinion on the following questions:
1. May a school district require that a student obtain written parental consent prior to releasing the student from school to receive confidential medical services?
2. May a school district adopt a policy pursuant to which the district will notify a parent when a student leaves school to receive confidential medical services?
 CONCLUSIONS
1. A school district may not require that a student obtain written parental consent prior to releasing the student from school to receive confidential medical services.
2. A school district may not adopt a policy pursuant to which the district will notify a parent when a student leaves school to obtain confidential medical services.
 ANALYSIS
Generally speaking, parental consent is required for a minor's medical treatment. (American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307,314-315; Ballard v. Anderson (1971) 4 Cal.3d 873, 878.) There are, however, exceptions, such as when the public interest in preserving the health of a minor takes precedence over the parent's interest in custody and control of the minor. (Wisconsin v. Yoder (1972) 406 U.S. 205, 233-234; In re Roger S. (1977) 19 Cal.3d 921, 930, 935.) In addition, a number of "medical emancipation" statutes allow minors to consent to medical treatment without parental knowledge, approval, or consent.
Medical emancipation statutes may be separated into two categories. First, they may authorize minors to consent to their own health care treatment because of a particular status. (See American Academy of Pediatrics v. Lungren, supra, 16 Cal.4th at pp. 315-316.) A minor who has become emancipated by reason of a court order, marriage, or active duty in the United States armed forces is considered an adult for purposes of consenting to health care services. (Fam. Code, §§ 7002; 7050, subd. (e)(1).) In addition, minors who are "self-sufficient" (minors who are 15 or older, living away from home, and managing their own financial affairs regardless of the source of their income) may consent to their own medical care. (Fam. Code, § 6922.)
Second, they may authorize minors to consent to what are considered to be particularly sensitive medical services. (See Fam. Code, §§ 6920-6929; American Academy of Pediatrics v. Lungren, supra,16 Cal.4th at pp. 316-317.) A minor of any age may consent to care related to the prevention or treatment of pregnancy. (Fam. Code, § 6925.)[1] A minor of age 12 or older may consent to treatment of an infectious, contagious, or communicable disease (Fam. Code, § 6926) or to care related to the diagnosis or treatment of rape (Fam. Code, § 6927). A minor of any age may consent to care related to the diagnosis or treatment of sexual assault. (Fam. Code, § 6928.)[2] A minor of age 12 or older may consent to care related to the diagnosis or treatment of drug-related or alcohol-related problems. (Fam. Code, 6929.)[3] A minor of age 12 or older may consent to mental health treatment, counseling, or residential shelter services if (1) the minor is mature enough to participate intelligently, in the opinion of the health care provider, and (2) the minor is either a danger to himself or herself or others without the treatment, or is the alleged victim of incest or child abuse. (Fam. Code, § 6924.)[4] A minor of any age may consent to HIV testing. (Health Saf. Code, § 121020.) Further, the records of these medical services are kept confidential from the minor's parent or guardian, unless the minor consents to such disclosure. (Health Saf. Code, §123115, subd. (a)(1); Civ. Code, § 56.11, subd. (c); see Health 
Saf. Code, § 123110, subd. (a); Civ. Code, § 56.10.)
The two questions presented for resolution concern "confidential medical services" provided to school students. For our purposes, such services refer to the second category of medical emancipation statutes — services which, by statute, a minor is authorized to obtain without the consent of or disclosure to a parent or guardian.
1. Requiring Parental Consent
The first question concerns whether a school district may require that a student obtain written parental consent prior to releasing the student from school to receive confidential medical services. We conclude that it may not.
School districts have broad powers to adopt policies in furtherance of their educational purposes, provided they do not act in a manner "in conflict with or inconsistent with, or preempted by, any law." (Ed. Code, § 35160; see Cal. Const., art. IX, § 14; Hartzell v. Connell (1984)35 Cal.3d 899, 915.) A policy requiring the prior written consent of a parent to release a student for confidential medical services would conflict with state law.
The Legislature has established a system of compulsory education for children between the ages of 6 and 18. (Ed. Code, §§ 42800-48341.) Attendance at school is excused, however, under specified circumstances. Education Code section 48205, subdivision (a), provides in relevant part:
 "Notwithstanding Section 48200 [requiring compulsory full-time education], a pupil shall be excused from school when the absence is:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(3) For the purpose of having medical, dental, optometrical, or chiropractic services rendered.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(7) For justifiable personal reasons, including, but not limited to, an appearance in court, attendance at a funeral service, observance of a holiday or ceremony of his or her religion, attendance at religious retreats, or attendance at an employment conference, when the pupil's absence has been requested in writing by the parent or guardian and approved by the principal or a designated representative pursuant to uniform standards established by the governing board." (Italics added.)
On its face, subdivision (a)(3) of section 48205 does not require parental consent for an excused medical absence. In contrast is subdivision (a)(7) of the statute, which does require parental consent for certain excused absences. We construe this difference in language as signifying a legislative intent not to require parental consent in order to excuse a student for the purpose of obtaining medical services.
In so construing the language of Education Code section 48205, we apply well established rules of statutory construction. " `Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' [Citation.] We presume a different legislative intent, not an oversight, from the fact that words used in [one provision] are missing from [another]." (People v. Duran (2001) 94 Cal.App.4th 923, 941; accord, People v. Trevino (2001) 26 Cal.4th 237, 242; People v. Drake (1977) 19 Cal.3d 749,755.) The phrase "when the pupil's absence has been requested in writing by the parent or guardian" cannot be added to subdivision (a)(3) of the statute in the guise of statutory interpretation. "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. [Citations.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627,633.) "[A] statute `. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citations.]" (Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1097.)
We reject the suggestion that Education Code section 46010.1 grants school districts discretion to require parental consent before releasing a student for confidential medical services, notwithstanding the language of Education Code section 48205. Education Code section 46010.1 states:
 "Commencing in the fall of the 1986-87 academic year, the governing board of each school district shall each academic year notify pupils in grades 7-12 inclusive and the parents or guardians of all pupils enrolled in the district, that school authorities may excuse any pupil from the school for the purpose of obtaining confidential medical services without the consent of the pupil's parent or guardian. The notice required pursuant to this section may be included with any other notice given pursuant to this code."
We view this provision as requiring school districts to notify both students and their parents that students are allowed to be excused from school for confidential medical appointments without parental consent.
If a school district could require parental consent under the terms of Education Code section 46010.1, the statute would no longer concern "confidential medical services." By definition, such services are kept confidential from the parent or guardian of the pupil. The legislative history of the statute makes clear that the Legislature intended only to ensure that parents of adolescent schoolchildren understand the requirements of the law with respect to medical services that are made "confidential" by statute.
Most importantly, a school district policy requiring prior written consent of a parent for a student's confidential medical services would undermine the purposes and intent of the medical emancipation statutes. In American Academy of Pediatrics v. Lungren, supra, 16 Cal.4th 307, the Supreme Court observed:
 ". . . [O]ver the past four decades the Legislature has recognized that, in a variety of specific contexts, the protection of the health of minors may best be served by permitting a minor to obtain medical care without parental consent. These statutes do not reflect a legislative determination that a minor who, for example, has been raped or has contracted a sexually transmitted disease would not benefit from the consultation and advice of a supportive parent. Indeed, as noted, a few of the statutes specifically call upon the treating physician or health care provider to notify and attempt to involve the minor's parents in the treatment process, so long as the circumstances suggest to the health care provider that such involvement will not be detrimental to the health or interests of the minor. [Citation.] Nor do these statutes imply that a minor who, for example, has been sexually assaulted or has a drug or alcohol abuse problem is more mature or knowledgeable than other minors of similar age; a minor who may obtain medical care for such conditions must still obtain parental consent before she or he may obtain, for example, an appendectomy.
 "Instead, each of these statutory provisions embodies a legislative recognition that, particularly in matters concerning sexual conduct, minors frequently are reluctant, either because of embarrassment or fear, to inform their parents of medical conditions relating to such conduct, and consequently that there is a considerable risk that minors will postpone or avoid seeking needed medical care if they are required to obtain parental consent before receiving medical care for such conditions. To protect their health in these particular circumstances, the statutes authorize minors to receive medical care for these designated conditions without parental consent." (Id. at pp. 317-318.)
We are directed to construe the provisions of Education Code sections35160, 46010.1, and 48205 in light of the relevant provisions of the Family Code and the Health and Safety Code relating to confidential medical services. "[W]e interpret a statute in context, examining other legislation on the same subject, to determine the Legislature's probable intent. [Citations.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist., supra, 14 Cal.4th at p. 642.) " ` "[P]rovisions relating to the same subject matter must be harmonized to the extent possible." ' " (Cooley v. Superior Court (2002) 29 Cal.4th 220,248.) "Where . . . two codes are to be construed, they `must be regarded as blending into each other and forming a single statute.' [Citation.]" (Tripp v. Swoap (1976) 17 Cal.3d 671, 679, overruled on other grounds in Frink v. Prod (1982) 31 Cal.3d 166, 180; see also Building Material 
Construction Teamsters' Union v. Farrell (1986) 41 Cal.3d 651, 665.) Accordingly, the relevant Education Code statutes may not be interpreted in a manner that eviscerates the requirements of the Family Code and Health and Safety Code.
We conclude that a school district may not require that a student obtain written parental consent prior to releasing the student from school to receive confidential medical services.
2. Notifying the Parent
The second question presented is whether a school district may adopt a policy pursuant to which the district will notify a parent when a student leaves school to obtain confidential medical services. We conclude that such a policy would violate state law.
Notice is not the same as consent, and while the medical emancipation statutes expressly address consent, they do not directly address giving notice. However, we are dealing here with "confidential" medical services. Just like requiring parental consent, a district's notification of a parent regarding a student's absence to receive confidential medical services would destroy the confidentiality of the medical services — contrary to the intent and purposes of the medical emancipating statutes.
Not only may minors seek sensitive medical treatment without parental consent, they have the right to keep the existence of such medical services confidential, even from their parents. (Health Saf. Code, §123115, subd. (a)(1); Civ. Code, § 56.11, subd. (c); see Health 
Saf. Code, § 123110, subd. (a); Civ. Code, § 56.10.) These confidentiality statutes evince a clear legislative intent to shield minors, not just from the possibility that parental consent might be withheld for certain medical services, but also from the necessity of revealing that the minor has resorted to those services at all.
Statutes protecting the privacy of medical information are based on the Legislature's awareness that the threat of disclosure might deter persons needing treatment from seeking it. (See In re Lifschutz (1970) 2 Cal.3d 415,431; Pettus v. Cole (1996) 49 Cal.App.4th 402, 433-434; Simek v. Superior Court (1981) 117 Cal.App.3d 169, 177.) A policy that requires parental notice when a student seeks such services would be inconsistent with the legislative intent to encourage minors to receive medical treatment by protecting the confidentiality of their medical information.
Our conclusion is not inconsistent with the provisions in some of the medical emancipation statutes that require health care professionals to notify the parent or guardian in certain situations. Unlike school officials, health care professionals are qualified to evaluate a minor's capacity to understand his or her treatment options on a case-by-case basis. (See American Academy of Pediatrics v. Lungren, supra,16 Cal.4th at p. 355.) Furthermore, the statutes give health care professionals the discretion to bypass parental notification when notification would be contrary to the minor patient's welfare. (Fam. Code, §§ 6924, subd. (d); 6928, subd. (c); 6929, subd. (c).) This is the kind of safeguard that has been a consistent feature of the parental consent and notification statutes upheld by the United States Supreme Court. (See Lambert v. Wicklund (1997) 520 U.S. 292, 298, 300; Akron v. Akron Center for Reproductive Health (1990) 497 U.S. 502, 510-512.) A policy pursuant to which a school would notify a parent whenever a student left school to obtain confidential medical services would afford no such recognized safeguard.
Nor is our conclusion inconsistent with statutes giving parents access to certain information bearing on their children's education, including access to their children's school records. (Ed. Code, §§ 49061; 51101, subd. (a)(10).)[5] While providing parental access to this information, the Legislature has protected students' rights to informational privacy, specifically regarding confidential medical services (e.g., Ed. Code, § 49091.12, subd. (b)) and disclosure of personal information to school counselors (Ed. Code, § 49602).
We conclude that a school district may not adopt a policy pursuant to which the school will notify a parent when a student leaves school to receive confidential medical services.[6]
*****
[1] This statute does not authorize a minor to be sterilized without the consent of a parent or guardian. (Fam. Code, § 6925, subd. (b)(1).) A provision of this statute requiring parental consent for an abortion was struck down as violating the constitutional right to privacy (Cal. Const., art. I, § 1) in American Academy of Pediatrics v. Lungren, supra, 16 Cal.4th 307. (See Fam. Code, § 6925, subd. (b)(2); Health 
Saf. Code, § 123450.)
[2] The health care professional providing treatment under this statute must attempt to contact the minor's parent or guardian, unless he or she reasonably believes that the parent or guardian committed the assault. (Fam. Code, § 6928, subd. (c).)
[3] This statute does not authorize a minor to receive replacement narcotic treatment without the consent of a parent or guardian. (Fam. Code, § 6929, subd. (e).) It requires a treating health care professional to contact a parent or guardian and give him or her an opportunity to participate in treatment, unless the professional believes such involvement would be inappropriate. (Fam. Code, § 6929, subd. (c).)
[4] This statute does not authorize a minor to receive convulsive therapy, psychosurgery, or psychotropic medication without the consent of a parent or guardian. (Fam. Code, § 6924, subd. (f).) A provider of residential services must attempt to notify a parent or guardian of the provision of services. Other health care professionals must contact and involve parents in the treatment plan, unless the professional believes such involvement would be inappropriate. (Fam. Code, § 6924, subds. (c), (d).)
[5] Nothing in this opinion is intended to curtail a parent's right to be informed when his or her child has been absent from school without excuse. (Ed. Code, § 51101, subd. (a)(4).)
[6] Because of the conclusions reached with respect to the two questions presented, each of which is based upon statutory grounds, we need not address constitutional issues such as the right of privacy (Cal. Const., art. I, § 1; see American Academy of Pediatrics v. Lungren supra, 16 Cal.4th 307; Hill v. National Collegiate Athletic Assn. (1994)7 Cal.4th 1).