[No. A020045. First Dist., Div. Two. May 11, 1987.]

BRIAN M. BLAZEVICH, a Minor, etc., Plaintiff and Appellant, v. STATE BOARD OF CONTROL, Defendant and Respondent.

COUNSEL

James F. Kemp for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Belinda J. Johns, Deputy Attorney General, for Defendant and Respondent.

OPINION

BENSON, J.—Brian M. Blazevich, a minor,[1] appeals from a judgment denying his petition for writ of mandate which sought indemnification under the Victims of Violent Crime Act[2] (the Act) for loss of his mother's support and loss of the value of her society, comfort, care and protection. We affirm the judgment.

Paulette Jeanne Clouse, Brian's mother, was murdered on June 29, 1975. She was stabbed to death by her estranged husband who was not Brian's father. Brian was six years old at the time. Brian's mother married Mr. Clouse in July 1973 at which time she terminated her employment. Before that time she had worked at various jobs and was able to support Brian. She separated from Mr. Clouse in March 1975 but was unable to return to work because she had given birth to a profoundly disabled second child in October 1974. This second child required her constant care.

The application for benefits filed with the State Board of Control (Board) which administers the Act stated Paulette had been employed at the Fiesta Rexall Pharmacy from January 1970 to March 1971 and thereafter was employed by the Pueblo Motel in Sonoma, the Old Hoss, the Red Pony and Dutil's Bakery. The application failed to state the amount of wages she had earned from any of these employers. The application sought indemnification for loss of support, for the value of her household services to Brian and the pecuniary value of her society, comfort, care and protection and for funeral expenses.

---

[1]These proceedings are brought by Brian's guardians, William and Inez Lourdeaux, his maternal grandparents.

[2]Government Code sections 13959-13969.1; unless otherwise noted, all statutory references are to the Government Code.

Except for funeral expenses, the claims were denied. The basis for denial of the claims was the Board's determination that Brian had suffered no out-of-pocket loss since his mother was not employed at the time she was killed. Brian filed a petition for writ of mandate asking the court to issue a peremptory writ of mandate directing the Board to set aside its decision and award Brian a cash payment. The trial court denied the petition on the grounds Brian had made no showing he had suffered " 'pecuniary loss' resulting in 'serious financial hardship' (Gov. Code, sec. 13959) due to expenses or loss of income or support caused by a crime of violence (Gov. Code, secs. 13960(e), 13964(a)(2))."

Brian concedes the program is limited to recovery of pecuniary losses. He contends the term "pecuniary loss" includes the value of household services he received and the value of providing substitutes for his mother's society, comfort, care and protection. Brian also asserts that the term "pecuniary loss" as used in the Act includes loss of a parent's future earnings even if the parent were not employed at the time of her death.

The Board argues the Act provides for reimbursement only for actual loss, that is, out-of-pocket loss and is not intended to compensate for nonpecuniary losses such as loss of household services or loss of society, comfort, care and protection. The Board asserts Brian failed to present evidence of measurable loss of support within the meaning of the Act.

Although neither party addresses the issue, it is clear that the petition for writ of mandate was filed under Code of Civil Procedure section 1094.5.[3] The Act provides for a mandatory hearing on applications (§ 13962) at which evidence is presented (§ 13963).

At the hearing, the Board adopted the recommendation of its staff which stated Brian had presented no verified monetary losses for support since his mother was not employed. The Board issued no formal written findings but the chairman of the Board stated at the hearing the following reasons: "We reimburse for actual losses. . . . [W]e have never interpreted the law to be able to give us the authority to reimburse someone who had no losses—out of pocket losses and if she was not working she had no out of pocket losses. . . . We don't look behind why she wasn't working and use that as a reason." Under the authority of *McMillan* v. *American Gen. Fin. Corp.*

---

[3]Code of Civil Procedure section 1094.5 provides in pertinent part as follows: "(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, . . . the case shall be heard by the court sitting without a jury."

(1976) 60 Cal.App.3d 175, 184 [131 Cal.Rptr. 462], these findings are sufficient.

■ Our standard of review of a judgment denying a petition for writ of administrative mandate is the same as that of the trial court when it reviews the determination of the administrative board. We must determine if the findings of the board are supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5, subd. (c); *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149 [93 Cal.Rptr. 234, 481 P.2d 242].) Brian did not have a vested right to an award under the Act which would require the trial court to undertake an independent review of the evidence. (*Bixby* v. *Pierno, supra,* at p. 144.)

Neither party cites to any appellate case interpreting the term "pecuniary loss" as used in the Act. Nor have we found any such case.

■ Brian argues we should give the same meaning to the term "pecuniary loss" in the Act as that given in the case law construing the wrongful death statute, Code of Civil Procedure section 377. He cites the legal maxim that words used in a new statute which have been construed in a particular sense in a former statute on a analogous subject, are presumed to be used in the same sense unless the new statute clearly expresses an intention to the contrary. (*Estate of Hoegler* (1978) 82 Cal.App.3d 483, 489 [147 Cal.Rptr. 289]; *Estate of Hoertkorn* (1979) 88 Cal.App.3d 461 [151 Cal.Rptr. 806].) Brian further cites *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 67 [137 Cal.Rptr. 863, 562 P.2d 1022] for the proposition that the wrongful death statute covers only pecuniary losses which include loss of household services and loss of society, comfort, care and protection.

Brian's first argument fails for two reasons. First, the term "pecuniary loss" is not used in Code of Civil Procedure section 377. The statute as originally enacted provided for pecuniary and exemplary damages. The words " 'pecuniary or exemplary' " were deleted by amendment and today the section provides for recovery of "damages." (*Krouse* v. *Graham, supra,* 19 Cal.3d at p. 67.) Pecuniary loss is one form of damages which has been allowed by courts construing the section. Second, a review of the Act reveals the two statutes are not analogous. The wrongful death statute creates a broad range of recovery based on culpability. The Act, however, is less broad, specifically setting forth the type of loss the Legislature intended to indemnify. (§§ 13959 and 13960, subd. (e).) The award is limited to indemnification up to a specified maximum. (§ 13965.) Unlike the wrongful death statute, the Act is not an exclusive form of recovery. Section 13966 provides the State shall be subrogated to the rights of the victim to whom cash

payments are made and entitles the State to a lien on any judgment or settlement.

Recovery under the wrongful death statute is not limited to costs actually incurred. Brian misreads the holding in *Krouse* which merely confirms that wrongful death actions allow expanded recovery to include nonpecuniary losses. That court stated: "These cases suggest a realization that if damages truly were limited to 'pecuniary' loss, recovery frequently would be barred by the heirs' inability to prove such loss." (*Krouse* v. *Graham, supra,* 19 Cal.3d at p. 68.)

A review of the statutory scheme reinforces the view that the Act provides recovery only for out-of-pocket losses. Section 13959 states the legislative intent of the Act: "It is in the public interest to indemnify and assist in the rehabilitation of those residents of the State of California who as a direct result of a crime suffer a pecuniary loss which they are unable to recoup without suffering serious financial hardship." Section 13960, subdivision (e), defines pecuniary loss as including "the loss of income or support that the victim has incurred or will incur. . . ." That section also sets forth the formula by which recoverable loss will be calculated: ". . . Said loss shall be in an amount of more than one hundred dollars ($100) or equal to 20 percent or more of the victims' net monthly income, whichever is less. . . ." Section 13961, subdivision (d)(2), requires the applicant to set forth in a verified application the loss of wages or support the victim has incurred or will incur and the extent to which the victim has been or may be indemnified for the expenses. ■ We hold that the Act provides for limited indemnity to those victims who suffer out-of-pocket "pecuniary loss" resulting in "serious financial hardship" due to expenses caused by violent crime. (§§ 13960, subd. (e), and 13964, subd. (a)(2).)

We need not decide whether a person who has suffered out-of-pocket expenses to provide for household services and the society, comfort, care, and protection which were previously supplied a victim of a violent crime can recover under the Act. Brian has shown no such expenses in the record before the Board or before the trial court.

■ Brian's claim for loss of future support because of his mother's death must also fail. Brian offered no evidence at the hearing before the Board in support of his claim. The evidence he produced to the Board showed that his mother was employed by Fiesta Rexall Pharmacy in 1970 and part of 1971 and that thereafter she was employed by four different employers until she stopped work in 1973 because of her marriage. No evidence was produced at the hearing to show Brian's mother's wages at any time. Nor was there any evidence to show how Brian or his mother were being

supported after she separated from her husband and before her death. In effect, Brian asked the Board to assume his mother would have taken a job and to base its award to him on what the Board would have to speculate she would have earned. The statutory scheme of the Act does not allow for such speculative awards.

From the record, it appears Brian understood he had not met his burden of proof. On appeal, he attempted to add letters to the record to show his mother intended to find a job just before her death. These letters were not before the Board or the trial court and were stricken from the appellate record on motion of the Board.

■ Also, in his appellate reply brief, Brian seeks to shift the burden to produce evidence from himself to the Board citing section 13962. Subdivision (b) of this section, however, places a burden on the Board to investigate all facts presented by an applicant. It does not impose on the Board the burden to produce the evidence necessary to prove entitlement.

The judgment of the trial court denying the petition for writ of mandate is affirmed.

Kline, P. J., and Smith, J., concurred.