[No. A035455. First Dist., Div. Three. Dec. 18, 1987.]

ROBERT L. WEBSTER, JR., et al., Plaintiffs and Appellants, v. STATE BOARD OF CONTROL, Defendant and Respondent.

30

**COUNSEL**

Conrad G. Tuohey, Teresa M. Ferguson, Bonnie G. Birnbaum and Tuohey & Prasse for Plaintiffs and Appellants

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Mary C. Michel and Ann Grogan, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**SCOTT, J.—**

I

*Introduction*

This action arises from a shooting incident on January 28, 1982, during which the husband of a coworker of appellant Robert L. Webster (Webster) opened fire with a gun in the office building where Webster worked and shot several persons, including Webster, who was severely injured. During the

shooting, Webster had dialed the 911 emergency telephone number to notify the police.

The appeal concerns claims for indemnification for injuries submitted by Webster, his wife, Lorraine Webster, and their daughter, Robyn Webster (appellants) to respondent State Board of Control (Board) under two separate articles of the Government Code[1] —article 1, section 13959 et seq., entitled "Victims of Crime" (Victims of Crime Act), and article 2, section 13970 et seq., entitled "Citizens Benefiting the Public" (commonly referred to as the Good Samaritan Act). Both the Victims of Crime Act and the Good Samaritan Act are administered by the Board. (§§ 13968, 13974.) The Board questioned whether Webster was a "good Samaritan," limited his recovery under the Victims of Crime Act to $2,829 for medical expenses not reimbursed from other sources, and denied the claims of his wife and child. By their petition for peremptory writ of mandate filed in the superior court, appellants challenged the Board's award on several grounds. The trial court denied the writ, and appellants appeal.

We affirm and hold: (1) a claimant under both the Victims of Crime Act and the Good Samaritan Act is not entitled to double recovery under both articles for the same injuries sustained; (2) a claimant under the Good Samaritan Act as well as the Victims of Crime Act is entitled to recovery for pecuniary losses only, and not for nonpecuniary losses such as pain and suffering; (3) neither the Victims of Crime Act nor the Good Samaritan Act authorizes an award for the value of reasonably anticipated future medical expenses, but only for expenses actually incurred; and (4) under the Good Samaritan Act, dependents of the good Samaritan are entitled to recover only if the good Samaritan has died as a result of the meritorious action.

II

*Governing Law*

A. *Victims of Crime Act.* The Victims of Crime Act was designed to assist California residents in obtaining restitution for pecuniary losses suffered as the direct result of criminal acts. (§ 13959.) Victims of crime who may be entitled to restitution for pecuniary losses include any person injured or killed as the direct result of crime, and anyone legally dependent upon such person for support. (§ 13960, subd. (a).) "Pecuniary loss" is defined as expenses for which the victim "has not and will not be reimbursed from any other source . . . ," including medical and mental health counseling expenses, and loss of income or support that the victim has or will incur as a

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

direct result of an injury or death. (§ 13960, subd. (d).) Thus, the Victims of Crime Act does not provide for indemnification for nonmonetary losses such as pain and suffering, emotional distress, or loss of consortium. (See, e.g., *Blazevich* v. *State Bd. of Control* (1987) 191 Cal.App.3d 1121, 1124 [237 Cal.Rptr. 35].) The maximum monetary award recoverable by a victim is $23,000. (§ 13965, subd. (a)(5).)

B. *Good Samaritan Act.* The Good Samaritan Act was enacted in recognition of the fact that direct action on the part of private citizens in preventing the commission of crimes, or in apprehending criminals, or rescuing a person in immediate danger of injury or death from fire, drowning, or other catastrophe, benefits the entire public. (§ 13970.) The Good Samaritan Act provides for the indemnification of citizens who perform such meritorious action, their surviving spouses and children, and others dependent upon them for support "for any injury, death, or damage sustained" as a direct consequence of such action to the extent they are not compensated from any other source. (*Ibid.*) The maximum amount recoverable by a claimant is $10,000. (§ 13973.) Section 13970 provides that a "claim [under the Good Samaritan Act] shall be denied if an award has been made under [the Victims of Crime Act] for the same incident." ■ Accordingly, any recovery under the Good Samaritan Act is barred if the claimant recovers under the Victims of Crime Act.

### III

*Appellants' Contentions and Discussion*

■ Our standard of review of a judgment denying a petition for writ of administrative mandate is the same as that of the trial court when it reviews the determination of the administrative board. We must determine if the Board's determinations are supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5, subd. (c); *Blazevich* v. *State Bd. of Control, supra,* 191 Cal.App.3d at p. 1125.)

A. *Appellants' claim for double recovery under both the Victims of Crime Act and the Good Samaritan Act.* ■ Appellants' first contention is that they are entitled to double recovery under both the Victims of Crime Act and the Good Samaritan Act for the same injuries sustained. In reviewing this contention, we must ascertain the intent of the Legislature, and in determining its intent, we turn first to the express provisions of the articles themselves. (See *Burnsed* v. *State Bd. of Control* (1987) 189 Cal.App.3d 213, 217 [234 Cal.Rptr. 316].) In 1971, the Legislature amended section 13970[2]

---

[2] Statutes 1971, chapter 1269, section 1, page 2487.

to provide that a claim under the Good Samaritan Act shall be denied if an award has already been made under the Victims of Crime Act for the same incident. Such provision contemplates the situation here of two claims filed jointly under both articles arising from the same incident, and evidences the legislative intent to avoid double recovery under both articles for the same injuries. Thus, if a victim successfully pursues a claim under the Victims of Crime Act, he is precluded from recovering under the Good Samaritan Act. This result is consistent with the language of both articles limiting recovery to indemnification for losses for which the victims are not compensated "from any other source." (§§ 13960, subd. (d), 13970.)

For these reasons, we reject appellants' claim to double recovery under both articles for the same injuries.

B. *Webster's claim for recovery for pain and suffering under the Good Samaritan Act.* Webster contends that the Board improperly denied his claim for pain and suffering under the Good Samaritan Act. His argument is threefold: he contends that (1) contrary to the Board's finding, he was a Good Samaritan; (2) the Good Samaritan Act does not limit recovery to pecuniary losses but allows for indemnification for pain and suffering and emotional distress; he therefore was entitled to recover for pain and suffering under the Good Samaritan Act; and (3) the Board was required to consider his claim under the Good Samaritan Act before considering his claim under the Victims of Crime Act, so that an award under the former would not be barred by an award under the latter.

We address first the issue of whether the Good Samaritan Act allows for compensation for nonpecuniary losses such as pain and suffering. As set forth above, while the Victims of Crime Act expressly limits recovery to pecuniary losses, the Good Samaritan Act contains no such express limitation. Webster, in support of his argument, cites the well-established rule of statutory construction that where a statute with reference to one subject contains a certain provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intention existed. (*People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622]; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1240 [222 Cal.Rptr. 673]; see *T & O Mobile Homes, Inc.* v. *United California Bank* (1985) 40 Cal.3d 441, 455 [220 Cal.Rptr. 627, 709 P.2d 430].) Webster argues that the failure of the Legislature to include an express limitation on recovery under the Good Samaritan Act to pecuniary losses evidences the Legislature's intent to allow for indemnification for nonpecuniary injuries such as pain and suffering under the Good Samaritan Act.

For several reasons, we do not find such rule of statutory construction compels the interpretation of the statute urged by Webster. ■ First, we apply the well-established canon of statutory construction that the contemporaneous construction of statutes by the administrative officials charged with their enforcement and interpretation is entitled to great weight and should be followed by a court unless clearly erroneous. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672]; *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325 [109 P.2d 935]; *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683]; see *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743].) In *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753 [521 P.2d 233, 155 A.L.R. 405], the court explained that the contemporaneous administrative construction of a statute is highly relevant and material evidence of the probable general understanding of the times and of the opinions of the persons who probably were active in the drafting of the statute. (*Id.,* at pp. 756-757.)

■ Here, the transcripts of the hearings on appellants' claims before the Board establish that the Board does not construe the Good Samaritan Act to allow for recovery for pain and suffering, but only for out-of-pocket losses.

Second, section 13970 states that the state may "indemnify" citizens for any injury, death, or damage sustained. ■ The term "indemnity" is defined as the obligation resting on one party to make good a loss or damage another party has incurred (*County of Los Angeles* v. *Superior Court* (1984) 155 Cal.App.3d 798, 802 [202 Cal.Rptr. 444]; *Kramer* v. *Cedu Foundation, Inc.* (1979) 93 Cal.App.3d 1, 9 [155 Cal.Rptr. 552]), or restitution, or reimbursement (Black's Law Dict. (5th ed. 1979) p. 692, col. 2). Such definition denotes payment of a definite, measurable loss, and not an award of general civil damages such as pain and suffering.

■ Finally, the purpose of the limitation on recovery to pecuniary losses under the Victims of Crime Act may be examined to determine if such purpose is equally applicable to the Good Samaritan Act. Although we find no legislative history pertinent specifically to section 13960 disclosing such purpose, one study of the different state systems providing for compensation for victims of crime notes that all states compensate victims for out-of-pocket losses, but only Hawaii permits recovery for pain and suffering. ■ ■ ■ ■ The study further notes that the majority of states refuse to compensate for this element of damages due to the difficulty in assessing such damages and the increased administrative burden created by the lack of objective guidelines. (Comment, *Rehabilitation of the Victims*

*of Crime: An Overview* (1973) 21 UCLA L.Rev. 317, 339.)[3] It is reasonable to assume that such difficulties and administrative burden would be present under the Good Samaritan Act as well as the Victims of Crime Act if recovery were allowed under the former for nonpecuniary damages. It is also reasonable to assume that if the Legislature sought to remove an impediment to the efficient administration of the Victims of Crime Act by limiting recovery to pecuniary losses, it intended to avoid such impediment with respect to the Good Samaritan Act as well.

Moreover, because an award under the Victims of Crime Act bars recovery under the Good Samaritan Act, it is reasonable to infer that the Legislature did not intend for greater recovery under the Good Samaritan Act than under the Victims of Crime Act for the same injuries sustained. A contrary interpretation would lead to the inequitable result of a person qualifying under both articles for the same injuries sustained, receiving an award under the Victims of Crime Act and being denied additional amounts for pain and suffering for the same injuries under the Good Samaritan Act to which he or she would otherwise be entitled but for the award under the Victims of Crime Act. ■ In construing statutes, the courts must attempt to avoid an interpretation which would lead to inequitable or unjust results. (See *Brennfleck* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.App.3d 666, 673 [84 Cal.Rptr. 50].) ■ Webster contends that, to avoid this inequitable result, the Board was required to consider first his claim under the Good Samaritan Act before ruling on his claim under the Victims of Crime Act. The express provisions of the articles, however, do not so require, and such requirement cannot be reasonably inferred, at least under the circumstances of this case.[4]

---

[3] This study does not constitute or refer to the legislative history of or background pertaining specifically to the enactment of the Victims of Crime Act. However, where California law parallels sister-state legislation on the same subject, and there is no relevant California judicial authority interpreting California law, the judicial interpretation by the sister-state courts of their legislation may be relevant in construing the California legislation. (See *Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].) Correspondingly, an examination of the policies promoted by sister-state legislation may be relevant in determining the policies and purpose of the parallel California legislation.

[4] Although we need not resolve the issue here, we can foresee that in other cases where claims are filed jointly under both articles, the question of whether the Board is required to rule first on the claim made under the Good Samaritan Act, and then secondly on the claim made under the Victims of Crime Act, or vice versa, will need to be resolved. The question arises because the type of injuries which are compensable and the dollar amounts recoverable are different under each article. For example, the record indicates that the Board does not allow for indemnification for property damage under the Victims of Crime Act, but does allow for indemnification for property damage under the Good Samaritan Act. Thus, the situation could arise where two claims are submitted jointly under both articles for physical injuries and property damage. If the Board ruled first on the claim under the Victims of Crime Act and made an award for medical expenses, but denied recovery for property damage, the claimant would be denied recovery for property damage under the Good Samaritan Act to

■    We therefore conclude that the Good Samaritan Act does not provide for compensation for nonpecuniary injuries such as pain and suffering. We therefore need not determine whether the Board improperly found that Webster did not qualify as a good Samaritan.

   C. *Webster's claim to past, present, and future losses of income and medical expenses.*    ■    Webster contends that under both articles, he is entitled to an award for past, present, and future losses of income and medical expenses, and that the Board improperly denied him such an award. Both articles provide for indemnification for loss of income and medical expenses (§§ 13960, subd. (d), 13970) suffered as a direct result of criminal activity, subject to the express limitations set forth in each article, and to the extent that the victim has not and will not be reimbursed from any other source. As to Webster's loss of income claim, he acknowledges that he returned to work in August 1982, approximately eight months after the shooting incident, thereafter received a promotion, and continued working until May 1985 when his employment was terminated. As to any loss of income during the eight-month period before his return to work in August 1982, the Board found that all losses were reimbursed by workers' compensation and social security benefits. Webster contends that workers' compensation benefits paid to him do not constitute the type of reimbursement contemplated by sections 13960 and 13970. This contention has no merit. The same contention was made and rejected in *Burnsed* v. *State Bd. of Control, supra,* 189 Cal.App.3d 213. There the court held that the term "any other source" as used in subdivision (d) of section 13960 means "every other source," and that the Legislature intended that every other source of reimbursement of a victim's expenses, including workers' compensation benefits, be looked to before the victim is eligible for restitution. (*Burnsed, supra,* at p. 217.)

   Webster apparently also claims a wage loss between the date of the termination of his employment in 1985 and the commencement of a new job approximately four months later. The record does not contain, however, evidence of any verified wage loss in 1985 directly resulting from the injuries suffered over three years earlier, after he had returned to work full-time and had received a promotion. Indeed, appellants' brief, though unclear, indicates that Webster resigned voluntarily from his employment because of a demotion relating to conflicts with his employer. Because the record is devoid of evidence of any wage loss directly caused by the injuries sustained in January 1982 which were not and will not be reimbursed from any other

which he would otherwise be entitled but for the award under the Victims of Crime Act. To avoid this and other inequitable results, remedial legislation appears to be necessary either to allow for indemnification for the same type of losses, and perhaps for the same monetary limits on recovery, under both articles; or to expressly require that under certain circumstances the Board must rule first on one claim before ruling on the other.

source, we conclude that substantial evidence supports the Board's denial of an award for loss of income. (See *Blazevich* v. *State Bd. of Control, supra,* 191 Cal.App.3d at p. 1126.)

As to Webster's claim for medical expenses, the Board determined that all medical expenses, with the exception of $2,829, were covered by the workers' compensation program. The record contains no evidence of other unreimbursed medical expenses incurred by Webster. Webster contends that the Board improperly denied him an award for all future medical treatment and care which he anticipates he will need as a result of the injuries sustained. Webster argues that in a personal injury action, the injured person is entitled to recover the reasonable value of medical treatment which is reasonably certain to be necessary in the future, and contends that he is entitled to a similar award from the Board under the Victims of Crime Act and the Good Samaritan Act.

This contention is incorrect for several reasons. First, an award under these two articles is not analogous to an award for general civil damages, but is restricted by the numerous rules and limitations set forth in the articles. (See, e.g., § 13965.) Second, section 13960, subdivision (d), provides for payment of losses for which the victim has not "and will not be reimbursed" from any other source. Such language precludes an award for expenses for which the victim will be reimbursed in the future, such as from the workers' compensation program or employment health insurance. Finally, section 13965, subdivision (c), provides that cash payments made pursuant to the article may be made on a periodic basis. Thus, it appears that if Webster incurs future medical expenses directly related to the injuries sustained in 1982 for which he will not be reimbursed, he shall be entitled to seek reimbursement for these expenses from the Board.[5]

D. *Claims of appellants Lorraine and Robyn Webster.* ▮▮▮ Appellants Lorraine and Robyn Webster challenge the Board's denial of their claims for loss of support. The Victims of Crime Act allows for recovery by a dependent of a victim for loss of support. (§ 13960, subd. (d)(3).) As stated previously, however, Webster failed to demonstrate any unreimbursed loss of income directly caused by the shooting incident; consequently, appellants Lorraine and Robyn Webster have suffered no loss of support.

Appellants Lorraine and Robyn Webster would not be entitled to an award for loss of support under the Good Samaritan Act even if they had suffered a loss of support. That article provides for recovery by Good

---

[5] These principles also apply to Webster's claim for reimbursement of expenses for vocational training, which claim apparently was not submitted to the Board.

Samaritans' "surviving spouses, their surviving children, and any persons dependent upon such citizens for their principal support . . . ." (§ 13970.) The term "survive" is defined as "to remain alive or in existence (as after another's death . . . .)" (Webster's New Internat. Dict. (3d ed. 1975) p. 2303.) Applying this definition to the term "surviving" here denotes persons who were dependent upon the good Samaritan for support and who survived his or her death. Because Webster did not die, appellants Lorraine and Robyn Webster are not his surviving spouse or child.

For these reasons, the Board's denial of any award to appellants Lorraine or Robyn Webster under either the Victims of Crime Act or the Good Samaritan Act was correct.

## IV

### Disposition

The judgment denying the petition for peremptory writ of mandate is affirmed.

White, P. J., and Barry-Deal, J., concurred.