131 Cal.Rptr.2d 221 (2003)
106 Cal.App.4th 808
The PEOPLE, Plaintiff and Respondent,
v.
Kenneth Lawrence CAMPBELL, Defendant and Appellant.
No. H023299.
Court of Appeal, Sixth District.
February 28, 2003.
Review Granted May 21, 2003.
*223 Hilda Scheib, Law Offices of Hilda Scheib (Under appointment by the Court of Appeal), San Francisco, Attorney for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Attorneys for Plaintiff and Respondent.
*222 WUNDERLICH, J.

I. Introduction
This case involves Proposition 36, an initiative measure passed in the November 2000 general election that enacted the Substance Abuse and Crime Prevention Act of 2000 (hereafter the Act). In general, the Act mandates drug treatment, rather than incarceration, for defendants, probationers, and parolees who commit qualifying offenses or violate qualifying conditions of probation or parole. (Prop. 36, § 1; see Historical and Statutory Notes, 51 West's Ann. Pen.Code (2003 supp.) foll. § 1210, p. 221.)
In this case, we hold that when a probationer commits both qualifying and nonqualifying offenses or probation violations, the Act does not apply.

II. Statement of the Case

In 1999, defendant Kenneth Lawrence Campbell was convicted of possessing heroin *224 and placed on probation. In July 2001, the court revoked probation, finding defendant not amenable to drug treatment, and sentenced him to prison. On appeal from the judgment, defendant claims that in basing the revocation on nonamenability, the court violated a statutory provision of Proposition 36. We disagree and affirm the judgment.

III. Background

In November 1999, defendant pleaded guilty to possession of heroin, and the court placed him on probation for three years. In March 2001, the Santa Clara County Probation Department filed a petition to modify defendant's probation, alleging that he had failed to report, regularly used marijuana, and failed to complete a drug-counseling program. Thereafter, when defendant did not appear at the probation hearing, the court summarily revoked probation and issued a bench warrant. Defendant was arrested in April 2001. In June 2001, the Probation Department amended its petition, adding an allegation that defendant had recently been convicted of driving under the influence (DUI). (Veh.Code, § 23152, subd. (a).)
On July 1, 2001, the Act became effective. (Prop. 36, § 8; see Historical and Statutory Notes, 51 West's Ann. Pen.Code (2003 supp.) foll. § 1210, p. 221.) Thereafter, on July 9, 2001, defendant's probation hearing was held. At that time, defense counsel argued for continued probation under the Act because defendant was not violent or dangerous and all of his probation violations were all drug related. The prosecutor opposed continuing probation. She noted that defendant had a history of chronic substance abuse, he had previously failed drug treatment, and he had recently been convicted of DUI. Under the circumstances, she argued that defendant was not amenable to further drug treatment. Defense counsel pointed out, however, that under the Act, amenability was not an issue because the alleged violations of probation were defendant's first. The court responded, "Well, if the person is not amenable to treatment, he's not going to go Prop. 36."
After argument, the court found all of the alleged violations true and that defendant was not amenable to treatment. It revoked probation and imposed a 16-month prison term for the underlying conviction for possessing heroin.

IV. Overview of Proposition 36

Uncodified sections of Proposition 36 explain the purpose of the Act. Section 2 states, "The People of the State of California hereby find and declare all of the following: [¶] (a) Substance abuse treatment is a proven public safety and health measure. Nonviolent, drug-dependent criminal offenders who receive drug treatment are much less likely to abuse drugs and commit future crimes, and are likelier to live healthier, more stable and more productive lives. [¶] (b) Community safety and health are promoted, and taxpayer dollars are saved, when nonviolent persons convicted of drug possession or drug use are provided appropriate community-based treatment instead of incarceration. [¶] (c) In 1996, Arizona voters by a 2-1 margin passed the Drug Medicalization, Prevention, and Control Act, which diverted nonviolent drug offenders into drug treatment and education services rather than incarceration. According to a Report Card prepared by the Arizona Supreme Court, the Arizona law: is `resulting in safer communities and more substance abusing probationers in recovery,' has already saved state taxpayers millions of dollars, and is helping more than 75 percent of program participants to remain drug free." (Prop. 36, § 2; see Historical and Statutory *225 Notes, 51 West's Ann. Pen.Code, supra, foll. § 1210, p. 207.)[1]
Section 3 states that the purpose and intent of the Act are "(a) To divert from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees charged with simple drug possession or drug use offenses; [¶] (b) To halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration  and reincarceration  of nonviolent drug users who would be better served by community-based treatment; and [¶] (c) To enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." (Prop. 36, § 3; see Historical and Statutory Notes, 51 West's Ann. Pen.Code, supra, foll. § 1210, p. 207.)
Proposition 36 added Penal Code sections 1210, 1210.1, and 3063.1,[2] and Health and Safety Code sections 11999.4 through 11999.13. Generally, section 1210 defines certain terms used in the Act, section 1210.1 deals with newly convicted nonviolent drug offenders and those on probation for nonviolent drug possession offenses, and section 3063.1 deals with parolees.[3]
Section 1210.1, subdivision (a) provides that, except as set forth in subdivision (b), "any person convicted of a nonviolent drug possession offense shall receive probation" for mandatory drug treatment. (Italics added.) Section 1210.1, subdivision (b) excludes those defendants who, in addition to such a drug conviction, (1) have committed serious or violent offenses within the last five years; (2) are convicted in the same proceeding of a felony or misdemeanor not related to the use of drugs; (3) possessed or were under the influence of a specified drug while using a firearm; (4) refuse drug treatment as a condition of probation; or (5) have twice failed drug treatment as a condition of probation and been found not to be amenable to drug treatment. (§ 1210.1, subd. (b)(1)-(5).)
Section 1210.1, subdivision (e) governs violations and the revocation of probation. It has separate provisions for those who were placed on probation under the Act (§ 1210.1, subd. (e)(2) & (e)(3)(A), (B), & (C) and those who were already on probation for "a nonviolent drug possession offense" when the Act became effective (§ 1210.1, subd. (e)(3)(D), (E) & (F)).[4]
Defendant was placed on probation in 1999 for simple possession of heroin, which is a nonviolent drug possession offense. The current revocation proceedings were based on defendant's first violations of probation. Given these circumstances, both parties agree that the pertinent provision of the Act is section 1210.1, subdivision (e)(3)(D). This subdivision provides, "If a defendant on probation at the effective date of this act for a nonviolent drug possession offense violates that probation either by being arrested for a nonviolent *226 drug possession offense, or a misdemeanor for simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or any activity similar to those listed in paragraph (1) of subdivision (d) of Section 1210,[5] or by violating a drug-related condition of probation, and the state moves to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court shall revoke probation if the alleged probation violation is proved and the state proves by a preponderance of the evidence that the defendant poses a danger to the safety of others. If the court does not revoke probation, it may modify probation and impose as an additional condition participation in a drug treatment program." (Italics added.)[6]

V. Discussion

Defendant contends that the court erred in revoking probation based on a finding that he was not amenable to further drug treatment. Defendant again argues that under section 1210.1, subdivision (e)(3)(D), amenability is not a relevant consideration for first-time probation violations; rather, probation may be revoked only if the court finds that the probationer poses a danger to others, a finding the court below did not make. (See People v. Davis (2003) 104 Cal.App.4th 1443, 129 Cal.Rptr.2d 48 [revocation for first violation error absent finding of dangerousness].)
The People argue, however, that defendant's DUI conviction rendered section 1210.1, subdivision (e)(3)(D) inapplicable. Thus, a finding of dangerousness was not a prerequisite for revocation, and the court properly exercised its general sentencing discretion and revoked probation. We agree.
As noted, section 1210.1, subdivision (e)(3)(D) applies when the defendant commits a qualifying violation of probation. Qualifying violations are (1) commission of "a nonviolent drug possession offense"; (2) commission of "a misdemeanor for simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or any activity similar to those listed in paragraph (1) of subdivision (d) of Section 1210"; or (3) a violation of "a drug-related condition of probation." (§ 1210.1, subd. (e)(3)(D).)
We first consider whether defendant's DUI conviction is a "nonviolent drug possession offense." We conclude that it is not.
Section 1210, subdivision (a) provides that the term "`nonviolent drug possession offense' means the unlawful possession, use, or transportation for personal use of any controlled substance identified in Section *227 11054, 11055, 11056, 11057 or 11058 of the Health and Safety Code, or the offense of being under the influence of a controlled substance in violation of Section 11550 of the Health and Safety Code. The term `nonviolent drug possession offense' does not include the possession for sale, production, or manufacturing of any controlled substance and does not include violations of Section 4573.6 or 4573.8." (Italics added.)[7]
When we give this language  especially the word "means"  its ordinary meaning (see People v. Birkett (1999) 21 Cal.4th 226, 231, 87 Cal.Rptr.2d 205, 980 P.2d 912), we find this definition to be clear and unambiguous: Nonviolent drug possession offenses are possession, use, transportation, and being under the influence of a controlled substance.
Here, defendant violated Vehicle Code section 23152, subdivision (a), which provides, "It is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle." The gravamen of this crime is driving under the influence. (See Wilkoff v. Superior Court (1985) 38 Cal.3d 345, 349, 211 Cal.Rptr. 742, 696 P.2d 134.) Because driving under the influence is conduct that goes beyond mere possession, use, transportation, and being under the influence of a controlled substance (see People v. McGuire (1993) 14 Cal.App.4th 687, 698-699, 18 Cal.Rptr.2d 12 [being under the influence and DUI are distinct offenses and separately punishable]) and because driving under the influence is not among the crimes expressly listed in section 1210, subdivision (a), we conclude that DUI is not a nonviolent drug possession offense. (See People v. Anzalone (1999) 19 Cal.4th 1074, 1081, 81 Cal.Rptr.2d 315, 969 P.2d 160 [the expression of one thing is the exclusion of another].)
The legislative history of the Act supports our conclusion.[8] The analysis in the ballot pamphlet by the Legislative Analyst informed voters that the Act defines a "nonviolent drug possession offense" "as a felony or misdemeanor criminal charge for being under the influence of illegal drugs or for possessing, using, or transporting illegal drugs for personal use." (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) analysis of Prop. 36 by Legislative Analyst, p. 23, italics added.) Moreover, proponents of Proposition 36 assured the voters it was "strictly limited" and "only affects those guilty of simple drug possession. No other criminal laws are changed." (Ballot Pamp., Gen. Elec. supra, argument in favor of Prop. 36, p. 26, italics added.)
Defendant cites nothing in the Act or its legislative history that shows it was intended to apply to intoxicated drivers. Moreover, we discern a contrary intent.
We note that the offenses listed in the statutory definition  simple possession, *228 use, transportation of controlled substances  involve conduct that is, in general, more dangerous and harmful to the perpetrator than to others. Thus, by limiting the term nonviolent drug possession offense to the listed offenses, the Act provides drug treatment for those whose conduct did not pose a serious threat to others and whose release on probation is not likely to diminish public safety. (See Prop. 36, §§ 2 & 3, quoted above, at pp. 224-225.) Moreover, the exclusions in section 1210.1, subdivision (b) for those who have serious or violent felony convictions within five years, or who also committed non-drug related offenses and for those used a firearm (§ 1210.1, subd. (b)(1), (2), & (3)) reflect an intent to target for treatment only nonviolent, non-dangerous offenders and exclude those who may pose a danger to others. In our view, the inclusion of intoxicated drivers would be inconsistent with this intent because, unlike simple drug offenders, intoxicated drivers pose a substantial danger to the health and safety of others. (See Burg v. Municipal Court (1983) 35 Cal.3d 257, 261-262, 198 Cal. Rptr. 145, 673 P.2d 732; People v. Schofield (2001) 90 Cal.App.4th 968, 973, 109 Cal.Rptr.2d 429.) Indeed, the purpose of Vehicle Code section 23152, subdivision (a) "is to protect members of the public who use the highways from those who have impaired their ability to drive as the result of substance use." (People v. Davalos (1987) 238 Cal.Rptr. 50, 192 Cal.App.3d Supp. 10, 14; People v. Woodard (1983) 192 Cal.Rptr. 229, 143 Cal.App.3d Supp. 1, 4; see People v. Bransford (1994) 8 Cal.4th 885, 891, 35 Cal.Rptr.2d 613, 884 P.2d 70; People v. Malvitz (1992) 14 Cal.Rptr.2d 698, 11 Cal.App.4th Supp. 9, 14.)
Next, we note that the Act applies to simple drug offenses involving controlled substances. Vehicle Code section 23152, subdivision (a) proscribes driving under the influence of not only controlled substances but also alcohol or any drug. For example, one can violate the statute by driving under the influence of a lawfully possessed prescription or nonprescription medication or any lawful substance "which could so affect the nervous system, brain, or muscles of a person as to impair, to an appreciable degree, his ability to drive a vehicle in the manner that an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would drive a similar vehicle under like conditions." (Veh.Code, § 312 [defining "drug" as used in the statute]; e.g., People v. Olive (2001) 112 Cal.Rptr.2d 687, 92 Cal.App.4th Supp. 21 [conviction for driving under the influence of kava]; People v. Keith (1960) 7 Cal.Rptr. 613, 184 Cal. App.2d Supp. 884, 887 [insulin].) Thus, although driving under the influence of noncontrolled substances like alcohol or a decongestant could not qualify as a nonviolent drug possession offense, driving under the influence of a controlled substance such as opium could theoretically qualify. However, nothing in the Act indicates that it was designed for both simple drug offenders and that subgroup of intoxicated drivers who were under the influence of controlled substances.[9]
Last, we note that in the ballot pamphlet, the proponents of Proposition 36 asserted that it "only affects simple drug possession. No other criminal laws are *229 changed." (Ballot Pamp., Gen. Elec., supra, argument in favor of Prop. 36, p. 26, italics added.) However, the inclusion of one type of DUI offender within the definition of "nonviolent drug possession offenses" would change the law by creating an anomalous exception to the statutory scheme for dealing with repeat DUI offenders. (See Veh.Code, §§ 23217, 23536, 23540, 23546, 23550.) This scheme reflects a legislative intent to punish multiple DUI offenders with mandatory and increasingly more severe punishment  i.e., from four-day to 120-day jail terms, depending on the number of convictions. However, if those convicted of driving under the influence of a controlled substance were eligible under the Act, then, after completing drug treatment, they could have their DUI convictions expunged. (See § 1210.1, subdivision (d)(1).) Thus, a second, third, or fourth conviction would be treated as a first offense.[10] However, those with multiple convictions of driving under the influence of alcohol or a noncontrolled substance would still be subject to the scheme of mandatory and increased punishment. As the People persuasively argue, it makes no sense to prohibit incarceration for those convicted of driving under the influence of controlled substances and thereby treat them more leniently than those convicted of driving under the influence of alcohol or lawfully possessed, drugs and medications because an intoxicated driver poses a danger regardless of the substance he or she ingests.
In sum, we conclude that DUI does not come within, and was not intended to come within, the statutory definition of a "nonviolent drug possession offense." Defense counsel conceded as much at the revocation hearing. Moreover, our conclusion is consistent with cases holding that defendants charged with driving under the influence are not eligible for diversion under section 1000. (E.g., People v. Covarrubias (1993) 18 Cal.App.4th 639, 642, 22 Cal. Rptr.2d 475; People v. Duncan (1990) 216 Cal.App.3d 1621, 1626-1628, 265 Cal.Rptr. 612.) It is also consistent with Arizona's Proposition 200, upon which the Act was patterned. (See Wozniak v. Galati (Ariz. App.2001) 200 Ariz. 550 [30 P.3d 131] [DUI conviction rendered defendant ineligible under Prop. 200].)
The next question we address is whether defendant's DUI conviction constitutes a qualifying probation violation as "a misdemeanor for simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or any activity similar to those listed in paragraph (1) of subdivision (d) of Section 1210." (§ 1210.1, subd. (e)(3)(D); see fn. 5, ante, p. 226.) Even though a first-time violation of Vehicle Code section 23152, subdivision (a) is, by itself, a misdemeanor (see Veh.Code, § 23536; Pen.Code, § 17), it is a misdemeanor for driving under the influence and not the specified conduct. Moreover, given the focus of the Act on nonviolent, non-dangerous drug offenders and the danger posed by intoxicated drivers, we *230 consider DUI to be fundamentally different from, not similar to, the conduct listed in paragraph one of section 1210, subdivision (d).[11]
Last, we conclude that defendant's DUI conviction was not a violation of a "drug-related condition of probation." Section 1210.1, subdivision (f) defines "drug-related condition of probation" to include "a probationer's specific drug treatment regimen, employment, vocational training, educational programs, psychological counseling, and family counseling." This definition indicates that drug-related conditions are those that focus directly on a probationer's substance abuse and its prevention and treatment. Here, the only such conditions were that defendant complete drug treatment; participate in vocational, employment, and/or educational training; and submit to drug testing.[12] Defendant's DUI conviction, however, did not violate these drug-related conditions. At most, it violated the standard condition that he obey all laws. (See People v. Bianco (2001) 93 Cal.App.4th 748, 752, 113 Cal.Rptr.2d 392 [standard condition of probation].) However, we consider this standard condition to be too broad and general to come within the plain meaning of the phrase "drug-related condition of probation."
Defendant claims that DUI can be deemed a violation of a drug-related condition of probation or a misdemeanor for simple use of drugs because "a defendant who drives while under the influence of drugs but commits no other traffic violation is simply using the drug. . . ." We find no merit to this claim. Even if we assume for purposes of argument that defendant was driving under the influence of a controlled substance (see fn. 9, ante, p. 228), he was doing more than simply using drugs, he was driving and thereby posing a danger to the lives of others.
Defendant claims that even if DUI is not a qualifying probation violation, his other qualifying violations  his use of marijuana and failure to complete drug treatment  triggered section 1210.1, subdivision (e)(3)(D). According to defendant, this section applies no matter how many nonqualifying violations a probationer has, as long as he or she also has at least one qualifying violation. In support of his position, defendant points out that section 1210.1, subdivision (b)(2) expressly excludes from the Act those who are convicted in the same proceeding of qualifying and nonqualifying offenses. However, Section 1210.1, subdivision (e)(3)(D) lacks a similar provision. Thus, defendant argues that the Act was intended to include, not to exclude, those who commit both qualifying and nonqualifying probation violations.
We find that defendant's interpretation is inconsistent with the purpose of the Act and also that it would lead to irrational consequences.
First, we examine those provisions that explicitly exclude those who engage in both qualifying and nonqualifying conduct. As noted, section 1210.1, subdivision (a) mandates probation for those who commit a nonviolent drug possession offense. Thus, it distinguishes between those who commit qualifying and non-qualifying offenses. *231 Section 1210.1, subdivision (b)(2), cited by defendant, further distinguishes between those who commit a qualifying offense and those who commit both qualifying and nonqualifying offenses, excluding the latter group. These distinctions narrow the focus of the Act to those persons who engage in only qualifying conduct. This focus reflects the purpose and intent of the Act: to treat, rather than incarcerate, nonviolent, non-dangerous drug users without diminishing public safety.
The provisions applicable to parolees make the same distinctions. Section 3063.1, subdivision (a) prohibits the revocation of parole for committing nonviolent drug possession offenses and instead mandates drug treatment. However, section 3063.1, subdivision (b)(2) excludes "[a]ny parolee who, while on parole, commits one or more nonviolent drug possession offenses and is found to have concurrently committed a misdemeanor not related to the use of drugs or any felony." (§ 3063.1, subd. (b)(2).) These provisions also reflect an intent to target those who commit simple drug offenses or, in the case of parolees, violate only drug-related conditions of parole. Moreover, these provisions apply regardless of whether the defendant was placed on parole under the Act or was already on parole when the Act became effective.
Turning to probationers, we note again that there are separate provisions for probationers under the Act (§ 1210.1, subd. (e)(2) & (e)(3)(A), (B), & (Q) and pre-Act probationers (§ 1210.1, subd. (e)(3)(D), (E), & (F)).
Section 1210.1, subdivision (e)(2) provides that when a probationer under the Act violates probation by engaging in nonqualifying conduct, the court may modify or revoke probation. However, section 1210.1, subdivision (e)(3)(A) and (B) provide that when such a probationer violates probation the first or second time by engaging in qualifying conduct, the court may revoke probation only if it finds that the probationer poses a danger to others or, at a second probation hearing, is not amenable to treatment. Although the Act does not state what happens when a probationer engages in both qualifying and nonqualifying conduct, these provisions read together are susceptible to only one reasonable interpretation: Where a probationer under the Act has engaged in both qualifying and nonqualifying conduct, section 1210.1, subdivision (e)(2) applies, and the court may modify or revoke probation without an additional finding of dangerousness or nonamenability. It follows, therefore, that the court must make such a finding in order to revoke probation under section 1210.1, subdivision (e)(3)(A) and (B) only when the probationer has engaged solely in qualifying conduct. This interpretation is necessary to maintain the intended focus of the Act on those whose conduct involves simple drug offenses. It also mirrors section 1210.1, subdivisions (a) and (b)(2) and section 3063.1, subdivisions (a) and (b)(2). And, most importantly, it results in the uniform treatment of defendants, parolees, and probationers under the Act who engage in both qualifying and nonqualifying conduct. Indeed, we can conceive of no reason to treat probationers under the Act differently.
Our discussion, however, does not resolve defendant's claim because he is a pre-Act probationer, and section 1210.1, subdivision (e)(2), discussed above, expressly applies only to probationers under the Act. Nevertheless, we believe that the provisions for pre-Act probationers must be harmonized with the provisions for defendants, parolees, and probationers under the Act to maintain the focus of the Act on nonviolent, non-dangerous offenders. To *232 this end, we conclude that those provisions must be interpreted so that pre-Act probationers who engage in both qualifying and nonqualifying conduct are treated in the same way as similarly situated defendants, parolees, probationers under the Act.
Defendant's interpretation, on the other hand, would create a treatment anomaly that would blur the otherwise sharp and consistent focus of the Act on simple nonviolent, non-dangerous drug offenders. Suppose, for example, that a pre-Act probationer violates probation for the first or second time by committing second degree burglary, grand theft, and arson. Under these circumstances, the court may revoke probation without an additional finding of dangerousness or amenability. (§ 1210.1, subd, (e)(2).) However, if the probationer also happened to be carrying a little marijuana in his pocket, then, under defendant's interpretation, the defendant is entitled to probation unless the court finds that he or she is dangerous or not amenable to treatment. We point out that such a multiple violation probationer would be entitled to the same treatment as a probationer whose only violation is possession marijuana. Such a probationer would be entitled to more beneficial treatment than a probationer who commits a less serious nonqualifying offense such as petty theft. And such a probationer would be entitled to more beneficial treatment than a probationer under the Act, a parolee, or a defendant who commits both qualifying and nonqualifying offenses.
Moreover, there is nothing about pre-Act probationers that might justify treating them differently and more beneficially than defendants, parolees, and probationers under the Act. Indeed, in our view, it would be irrational to do so. Rather, when we read the entire Act in light of its purpose and its targeted focus on nonviolent, non-dangerous drug offenders, we conclude that it was intended to treat those who engage in both qualifying and nonqualifying conduct in the same way: All are excluded.
We acknowledge the lack of an express provision similar to those that exclude defendants and parolees who engage in both qualifying and nonqualifying conduct. We further acknowledge the principle of statutory construction that "`"[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed."' [Citation.]" (People v. Drake (1977) 19 Cal.3d 749, 755, 139 Cal. Rptr. 720, 566 P.2d 622, quoting People v. Valentine (1946) 28 Cal.2d 121, 142, 169 P.2d 1.) However, the lack of a certain provision in one of two related statutes does not invariably imply a different intent. (See, e.g., Traverso v. People ex rel. Dept. of Transportation (1993) 6 Cal.4th 1152, 1166, 26 Cal.Rptr.2d 217, 864 P.2d 488; Webster v. State Bd. of Control (1987) 197 Cal.App.3d 29, 36, 242 Cal.Rptr. 685.)
Here, we do not find that the lack of an express provision indicates that the Act was intended to include pre-Act probationers who engage in both qualifying and nonqualifying conduct. On the contrary, such a view is unreasonable and inconsistent with the overall purpose of the Act.
In sum, therefore, we conclude that the finding requirement in section 1210.1, subdivision (e)(3)(D)  and by implication the same requirement in subdivision (e)(3)(E)  does not apply when a probationer has committed both qualifying and nonqualifying offenses or violations of probation. The requirement applies when the probationer engages in qualifying conduct. Thus, here the court could properly revoke probation without a finding of dangerousness, and the court's general sentencing *233 discretion authorized it to revoke probation based on a finding of nonamenability. Defendant does not claim that there is insufficient evidence to support the court's finding of nonamenability. Nor does he claim that this finding does not support the revocation of probation.

VI. Disposition

The judgment is affirmed.
WE CONCUR: PREMO, Acting P.J., and ELIA, J.
NOTES
[1] The Arizona initiative referred to was Proposition 200. (See Calik v. Kongable (Ariz. 1999) 195 Ariz. 496, 497 [990 P.2d 1055, 1056].)
[2] All further statutory references are to the Penal Code unless otherwise specified.
[3] Health and Safety Code sections 11999.4 through 11999.13 deal with funding for drug treatment programs.

After the Act was passed, the Legislature enacted urgency legislation effective October 11, 2001, that amended some of these code sections and enacted new ones to supplement them. (Stats.2001, ch. 721, §§ 1-10, No. 11 West's Cal. Legis. Service, pp. 4444-4452.)
[4] For convenience, we refer to the groups as probationers under the Act and pre-Act probationers.
[5] Section 1210, subdivision (d) provides, "The term `misdemeanor not related to the use of drugs' means a misdemeanor that does not involve (1) the simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or (2) any activity similar to those listed in paragraph (1)." (Italics added.)
[6] A literal reading of section 1210.1, subdivision (e)(3)(D) suggests that there is a prerequisite procedural chronology for the Act to apply: (1) the defendant is on probation when the Act became effective; (2) he or she then violates probation; (3) the State moves to revoke probation; and (4) the court holds a hearing. This was not the chronology of events here. Defendant violated probation; the Probation Department filed petitions to modify probation; and, before the Act became effective, the court summarily revoked probation pending arraignment and a formal revocation hearing. In light of our holding, we do not address possible issues raised by the wording of the statute and the procedural chronology in this case.
[7] Health and Safety Code sections 11054-11058 establish schedules of controlled substances and list specific substances, such as opiates, stimulants, depressants, hallucinogenics, and narcotics. Health and Safety Code section 11550 prohibits using or being under the influence of particular controlled substances identified in these schedules.

Sections 4573.6 and 4573.8 proscribe possession of controlled substances and drug paraphernalia in places where prisoners are kept.
[8] We take judicial notice of the ballot pamphlet for Proposition 36, which may properly be considered to show the intent of the voters in passing an initiative measure. (See Evid. Code, § 452, subd. (c); Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 182-183 & fn. 6, 172 Cal.Rptr. 487, 624 P.2d 1215; People v. Superior Court (Turner) (2002) 97 Cal.App.4th 1222, 1230, fn. 4, 119 Cal.Rptr.2d 170; Kidd v. State of California (1998) 62 Cal.App.4th 386, 407, fn. 7, 72 Cal.Rptr.2d 758.)
[9] We observe that the record here does not establish that defendant was driving under the influence of a controlled substance. When asked about his DUI conviction, defendant testified that he had been under the influence of alcohol at the time. He did not recall having any drugs in his system at the time, and when asked whether this was "solely an alcohol-related driving under the influence[,]" defendant said "yes." He explained that he had been drinking that day because he was depressed and doing so made him happy.
[10] Section 1210.1, subdivision (d)(1) provides, in relevant part, "At any time after completion of drug treatment, a defendant may petition the sentencing court for dismissal of the charges. If the court finds that the defendant successfully completed drug treatment, and substantially complied with the conditions of probation, the conviction on which the probation was based shall be set aside and the court shall dismiss the indictment, complaint, or information against the defendant. In addition . . ., both the arrest and the conviction shall be deemed never to have occurred. . . . [T]he defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted."
[11] The issue of whether DUI is a "misdemeanor not related to the use of drugs" (§ 1210.1, subd. (b)(2)) is currently before the California Supreme Court in People v. Canty (2002) 100 Cal.App.4th 903, 123 Cal.Rptr.2d 532, review granted October 16, 2002 (S109537).
[12] To the degree that reporting to his probation officer was designed to monitor defendant's compliance with the other drug-related conditions, it too is arguably drug related.